**2021 IL 126507**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126507)

THOMAS ITTERSAGEN, Appellant, v. ADVOCATE HEALTH AND HOSPITALS CORPORATION *et al.*, Appellees.

*Opinion filed November 18, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1        Plaintiff, Thomas Ittersagen, brought a medical malpractice action against defendants Advocate Health and Hospitals Corporation, doing business as Advocate Medical Group (Advocate Medical), and one of its doctors, Anita

Thakadiyil, M.D. Plaintiff alleged that defendants negligently failed to diagnose him with sepsis and treat him appropriately. The matter proceeded to a trial, and a jury was impaneled and sworn.

¶ 2        More than halfway through the trial, the Cook County circuit court received a note from a juror, who reported that he had a business relationship with what he called "the Advocate Health Care System Endowment." The juror said he believed the endowment was affiliated with but separate from Advocate Medical. He explained that his connection to Advocate Medical was so attenuated that he forgot to mention it during jury selection. The juror insisted that the outcome of the trial would not affect him financially and that he could remain fair and impartial.

¶ 3        Plaintiff asked the trial court to remove the juror for actual bias or implied bias and to replace him with an alternate juror. The trial court denied the request, and the jury ultimately returned a verdict for defendants. The appellate court rejected plaintiff's claim of juror bias and affirmed the judgment for defendants. 2020 IL App (1st) 190778, ¶ 63.

¶ 4        On appeal, plaintiff seeks a new trial on the sole ground that the juror should have been removed for implied bias. Plaintiff contends the juror's business relationship with the endowment created a presumption of bias against defendants that cannot be rebutted by the juror's claims of impartiality. Defendants respond that, without evidence of the affiliation between the endowment and Advocate Medical, plaintiff failed to show a disqualifying relationship between the juror and defendants. Based on the limited evidence and the unique circumstances presented, we agree with defendants and affirm.

¶ 5                                I. BACKGROUND

¶ 6        On the first day of the 11-day trial, juror William Glascott was impaneled and sworn as a member of the jury. At the beginning of the seventh day, the trial judge received a note from juror Glascott. The judge summoned the attorneys outside the presence of the jury and read the note, which stated:

"Although I don't believe it would bias me, I thought I should disclose that my firm has a business relationship with Advocate. I apologize. I did not realize or think of this until last night. Bill Glascott."

¶ 7    Plaintiff's counsel immediately asked to strike juror Glascott for cause, arguing that, if this information had been disclosed during *voir dire*, counsel would have had the opportunity to strike the juror for cause or exercise a peremptory challenge. The trial judge elected to investigate the business relationship rather than excuse the juror summarily. However, the parties did not request a continuance to gather and present additional evidence on the alleged bias. The trial court's decision not to strike juror Glascott was based solely on a colloquy among the trial judge, the parties' attorneys, and the juror.

¶ 8                         A. Green Courte Partners and the Endowment

¶ 9    Juror Glascott attempted to explain his employment and how it related to the endowment and defendants. Juror Glascott reported that he was employed by Green Courte Partners (Green Courte), a private equity company that raises funds to invest in real estate. He described Green Courte as a "general partner" that creates investment funds on behalf of its clients, whom he called "limited partners." As many as 50 limited partners may invest in any given fund. One such limited partner was something juror Glascott called "the Advocate Health Care System Endowment." Neither Advocate Medical nor the doctor was a limited partner.

¶ 10    Green Courte charged its limited partners an asset management fee, depending on the amount invested. Green Courte used the fees to pay its employees' salaries and bonuses and other operational expenses. Green Courte also received a portion of the return if the firm met incentive thresholds.

¶ 11    Juror Glascott was the chief investment officer of Green Courte, and his role was to "oversee all of the new investments that we make." His annual compensation consisted of a salary and bonuses tied to the aggregate investment in the firm's funds. He also had the opportunity to invest his own money alongside the firm's limited partners.

¶ 12    Juror Glascott insisted that he believed the verdict would not affect his compensation in any way because "the decision makers who pay me and the way my compensation is structured is not at all dependent on a medical malpractice suit ***. The people we interface with don't even know about it."

¶ 13    Juror Glascott conceded to plaintiff's counsel that Green Courte, as the general partner, owed a fiduciary duty to its limited partners, including the endowment. He expressly stated, "I have a fiduciary responsibility to the endowment of Advocate." But he insisted that neither he nor his employer owed a fiduciary duty to defendants.

¶ 14    When asked why he did not disclose his fiduciary duty to the endowment sooner, he explained that he "didn't make the connection" because "there wasn't a specific question" during jury selection about business relationships with the parties.[1] He recalled that the questioning had been limited to whether he had been a patient of Advocate Medical or was familiar with its operation.

¶ 15    Juror Glascott described his "connection" to defendants as "several layers removed." The link did not even occur to him until an e-mail jogged his memory. The night before he sent the note to the trial judge, juror Glascott received an automated e-mail from LinkedIn, a professional network platform. The message announced a job promotion for someone the juror was "connected to at Advocate." He did not specify whether "Advocate" referred to the endowment, defendant Advocate Medical, or some other entity.

¶ 16                    B. The Endowment and Advocate Medical

¶ 17    Juror Glascott told the court that he believed Advocate Medical's business was separate from the endowment. He explained his firm's client was "the overall $6 billion endowment" and not "the medical group that's here." He also agreed with defense counsel's statement that "the endowment people are separate from the Medical Group *per se*, and you understand that this [defendant] is Advocate Health

---

[1]The record does not contain a transcript, a bystander's report, or an agreed statement of facts concerning jury selection. See Ill. S. Ct. R. 323 (eff. July 1, 2017).

and Hospitals, Advocate Medical Group, and one of its doctors." Juror Glascott also stated he did not know and had never met the doctor.

¶ 18   Juror Glascott did not know whether the endowment "paid" defendants in any way. He did say "the endowment raises money for the growth and expansion of the hospital system overall. So they have a pool of money that they invest to grow the hospital system." But otherwise, he said he did not know who owned the endowment or "where that money goes." Juror Glascott said, "I believe the endowment's purpose is to grow by [adding] hospitals, grow hospitals, you know, fund growth of—you know, build buildings, that type of thing."

¶ 19   Defense counsel then interjected—without comment from plaintiff's counsel, the trial judge, or the juror—that "the salaries and compensation for [the] Medical Group comes specifically from Medical Group operations. They do not come from any other endowment, and that's part of the employment contract."

¶ 20   According to juror Glascott, the endowment did not have anything to do with malpractice liability, "other than they own hospitals and I assume they earn money in some capacity from the defendant, one of their affiliates do."

## C. Alleged Actual Bias

¶ 22   Juror Glascott asserted repeatedly, beginning with his note, that his business relationship with the endowment would not prevent him from serving as an impartial juror. He told the court he could "stay neutral and unbiased to both parties" and that his employment would not color his view of the evidence. The juror insisted he could remain "fair and unbiased."

## D. The Trial Court's Ruling

¶ 24   The trial court denied plaintiff's request to excuse juror Glascott for actual bias, stating,

"This ruling is based just really completely on the demeanor of the juror and what he says. When he says that he does not believe that he would be biased, he was pretty adamant that he could be fair all the way through. It just seemed

to me that in an abundance of caution, he decided to disclose this information now after he got reminded of it with this LinkedIn e-mail. I find that he has not—there is no directed [*sic*] fiduciary duty between this juror and either of the defendants in the case. He's not someone who is responsible for Advocate [Medical] or managing the money. Advocate [Medical] is not responsible for him anyway. So he didn't even know about this at all, and it really is not something that he believes would even factor into his decision. So in really scrutinizing this juror, this is the reason why I had him come back here so that I could really take a good look at him. If I thought that he couldn't be fair or that there was a risk with his demeanor that he couldn't be fair, I would have excused him right away, but I find that he could be fair and that he would be fair and will be fair. So the motion to excuse him for cause is denied, so the said juror will continue to serve."

¶ 25    In her initial ruling, the trial judge did not mention implied bias. However, in denying plaintiff's motion for a new trial, she reiterated that she found juror Glascott was not biased and that "if there were any type of business relationship with the defendant, it was extremely attenuated." According to the trial judge, "After extensively questioning the juror, the court believed that any relationship was remotely attenuated. It was the court's impression that the relationship was so insignificant to this juror that he didn't even recall it at the time of *voir dire* \*\*\*." The trial judge "closely scrutinized" juror Glascott's demeanor and found him "clearly credible when he responded that he would be truthful, fair and unbiased." The court further explained,

"It's the court's impression that [juror Glascott] was embarrassed that he forgot to volunteer the information during *voir dire* because the information was so insignificant to [him] that he did not think to do so as he did not recall it then. It was apparent that he did not know which Advocate entity was involved with the endowment or exactly which fiduciary responsibilities he might have had. Whatever they were, they were extremely attenuated to the point they were insignificant to the juror. Moreover, his compensation was not impacted in any way by the case or defendants."

¶ 26                            E. The Appellate Decision

¶ 27        In the appellate court, plaintiff argued, *inter alia*, that juror Glascott's
relationship with Advocate Medical was prejudicial and warranted a new trial. He
claimed that the trial court's finding that no fiduciary duty existed between juror
Glascott and Advocate Medical was incorrect as a matter of law. 2020 IL App (1st)
190778, ¶ 56. The appellate court interpreted this line of argument as a claim of
implied bias. *Id.* ¶ 58.

¶ 28        Plaintiff asserted that juror Glascott admitted a direct relationship with
Advocate Medical. *Id.* Therefore, plaintiff argued, the decision not to remove juror
Glascott for cause was against the manifest weight of the evidence. *Id.* ¶ 56. Based
on the record, the appellate court concluded,

> "plaintiff has failed to demonstrate juror Glascott's relationship with defendant
> Advocate Medical rises to the level of presumed bias. No evidence was
> presented to the trial court regarding the relationship between defendant
> Advocate Medical and the Advocate endowment. Juror Glascott himself did not
> know the nature and extent of the relationship. It was his understanding,
> however, that he would not be affected financially by the result of this lawsuit.
> In addition, defense counsel represented that the salaries and compensation for
> Advocate Medical came from Advocate Medical operations not from the
> endowment. She further indicated that this information could be found in the
> physicians' employment contracts. In sum, the evidence was insufficient to
> demonstrate any express fiduciary relationship between juror Glascott and
> defendant Advocate Medical." *Id.* ¶ 63.

¶ 29        The appellate court also held the trial court did not abuse its discretion by not
excusing juror Glascott for cause. *Id.* ¶ 66.

¶ 30        Plaintiff filed a petition for leave to appeal, which we allowed pursuant to
Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020). We granted the Illinois Trial
Lawyers Association leave to submit a brief *amicus curiae* in support of plaintiff,
pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010).

¶ 31                                II. ANALYSIS

¶ 32      On appeal, plaintiff argues that the trial court's decision not to excuse juror Glascott and replace him with an alternate juror denied plaintiff his right to a trial by an unbiased jury. Plaintiff abandons his argument that juror Glascott displayed actual bias, but he renews his implied-bias argument.

¶ 33      Plaintiff also argues the appellate court erred by denying his motion to take judicial notice of a tax form that Advocate Medical purportedly filed with the Internal Revenue Service (IRS). Plaintiff claims the return shows that Advocate Medical and the endowment were a single entity at the time of the trial and, therefore, juror Glascott's fiduciary duty owed to the endowment extended to Advocate Medical.

¶ 34      Defendants respond that plaintiff forfeited the issue by seeking judicial notice for the first time after the appellate court ruled in defendants' favor. In the alternative, defendants argue the tax form is not subject to judicial notice because it is evidence open to interpretation and not an adjudicative fact beyond dispute. Defendants offer a competing interpretation of the tax form, claiming it shows Advocate Medical had no endowment, either separate or direct. Therefore, defendants conclude, there could be no relationship between defendants and juror Glascott.

¶ 35                             A. Request to Strike

¶ 36      Initially, we address defendants' argument that we should strike certain sections of plaintiff's brief for noncompliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Specifically, defendants urge us to strike plaintiff's nature of the case, the issues presented, the statutes construed, and the statement of facts. Rule 341(h)(2) requires an introductory paragraph that is intended to be a statement of the nature of the action and the judgment and whether any question is raised on the pleadings. Plaintiff's brief contains a three-paragraph recitation of the underlying facts instead. Rule 341(h)(3) requires a brief statement of the issues without detail, but plaintiff's issues incorporate favorable facts and omit unfavorable ones, crossing the line into argument. Rule 341(h)(5) requires that the brief set out verbatim any statute, constitutional provision, treaty, ordinance, or regulation at

issue, but defendants argue that plaintiff's brief cites a statute and a supreme court rule that are not "at issue" because they were not argued in the trial court. Finally, Rule 341(h)(6) requires a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Defendants argue that plaintiff's statement of facts "contains numerous inaccuracies, and a great deal of argument and comment not supported by the [r]ecord." Indeed, plaintiff paraphrases the transcript to give the false impression that it is undisputed that Advocate Medical and the endowment are a single entity. In his reply brief, plaintiff generally denies any noncompliance with the briefing requirements of Rule 341(h).

¶ 37 We remind the parties that the Illinois Supreme Court rules are not suggestions; they have the force of law and must be followed. *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal, should the circumstances warrant. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9. Plaintiff's violations do not hinder our review to the point that dismissal of the appeal would be appropriate, but we will disregard the noncompliant portions of plaintiff's brief. We also admonish counsel to carefully follow the supreme court rules in future submissions.

¶ 38                                   B. Implied Bias

¶ 39 Plaintiff argues juror Glascott was not qualified to serve on the jury because his fiduciary duty to the endowment created a presumption of bias against defendants. The United States Supreme Court has long held that " '[a litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32 (1973) (quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968)). "Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984).

¶ 40 However, "our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *In re*

*Murchison*, 349 U.S. 133, 136 (1955). Accordingly, this court has held that the discovery of juror bias might compel the reversal of a judgment and a remand for a new trial. *City of Naperville v. Wehrle*, 340 Ill. 579, 584 (1930). "The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *United States v. Wood*, 299 U.S. 123, 133 (1936). Implied bias is "a bias attributable in law to the prospective juror regardless of actual partiality." *Id.* at 134; *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (bias is implied in those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances).

¶ 41     In *Wehrle*, we restated the Supreme Court's description of the direct relationships that create a presumption of juror bias:

> "[O]ne is not a competent juror in a case if he is master, servant, steward, counselor or attorney of either party. In such case a juror may be challenged for principal cause as an absolute disqualification of the juror. *** This rule applies as well to criminal as to civil cases. *** [A] clerk or employé of a private party or of a corporation is not qualified to sit as a juror in such a case, over the objection of the opposite side. *** Modern methods of doing business and modern complications resulting therefrom have not wrought any change in human nature itself, and therefore have not lessened or altered the general tendency among men, recognized by the common law, to look somewhat more favorably, though perhaps frequently unconsciously, upon the side of the person or corporation that employs them, rather than upon the other side. Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no bias, and said that he was perfectly able to decide the question wholly uninfluenced by anything but the evidence. The law therefore most wisely says that with regard to some of the relations which may exist between the juror and one of the parties, bias is implied, and evidence of its actual existence need not be given." *Crawford v. United States*, 212 U.S. 183, 195-96 (1909).

See *Wehrle*, 340 Ill. at 582-83.

¶ 42   More than 40 years later, in *People v. Cole*, 54 Ill. 2d 401, 413 (1973), we reiterated the principle that bias can be presumed from a juror's relationship with a party:

> "At common law a juror was presumed to be biased and therefore disqualified if he was related to a party to the litigation through blood or sanguinity or through certain indirect personal relationships. *** [T]here are certain relationships which may exist between a juror and a party to the litigation which are so direct that a juror possessing the same will be presumed to be biased and therefore disqualified. In such a case it is not necessary to establish that bias or partiality actually exists."

¶ 43                              1. Standard of Review

¶ 44   Plaintiff does not quarrel with the trial court's finding that juror Glascott was credible and did not display actual bias. But plaintiff disputes the trial court's characterization of the juror's relationship with Advocate Medical and argues the court erred as a matter of law. Defendants respond that the decision not to excuse the juror was not an abuse of discretion. We take this opportunity to clarify and contrast the standards of review that apply to judicial findings concerning actual bias and implied bias.

¶ 45   In *Cole*, the defendant appealed the trial court's decision not to remove a juror for actual bias. We stated,

> "[t]he determination of whether or not the prospective juror possesses the state of mind which will enable him to give to an accused a fair and impartial trial rests in the sound discretion of the trial judge. His determination should not be set aside unless it is against the manifest weight of the evidence." *Id.* at 414.

We explained, "[t]he determination of impartiality is not purely an objective determination ***. The statement of the juror is proper for the court to consider as evidence of his state of mind to be given the weight to which it is entitled under the circumstances." *Id.*

¶ 46    Deciding whether a juror is qualified to serve is a judicial determination, and "like the determination of any other issue of fact, must be made from the evidence. [Citations.] Mere suspicion of bias is not evidence." *Id.* at 415; see also *Dennis v. United States*, 339 U.S. 162, 168 (1950) ("[W]hile impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor.").

¶ 47    In certain extraordinary situations, a juror's bias may be implied from his or her relationship with a party or other trial participant. Whether the relationship supports a presumption of bias is a question of law. *Smith v. Phillips*, 455 U.S. 209, 222 n* (1982) (O'Connor, J., concurring) ("In those extraordinary situations involving implied bias, state-court proceedings resulting in a finding of 'no bias' are by definition inadequate to uncover the bias that the law conclusively presumes."). The standard of review on questions of law is *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007).

¶ 48                                    2. Fiduciary Duty

¶ 49    Plaintiff argues that juror Glascott's fiduciary duty to the endowment is the type of relationship between a juror and a party that requires application of the presumption of juror bias. Plaintiff advocates a rule prohibiting a prospective juror from serving if the juror owes a party a fiduciary duty. Owing a fiduciary duty arguably qualifies as the type of direct relationship that would create a presumption of juror bias.

> " 'A fiduciary relationship exists where there is special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. It exists where confidence is reposed on one side and resulting superiority and influence is found on the other. [Citations.] The relationship may exist as a matter of law between attorney and client, guardian and ward, principal and agent, and the like, or it may be moral, social, domestic, or even personal. Where the relationship does not exist as a matter of law or is sought to be established by parol evidence, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion.' " *Martin v. Heinold*

*Commodities, Inc.*, 163 Ill. 2d 33, 45-46 (1994) (quoting *Kolze v. Fordtran*, 412 Ill. 461, 468 (1952)).

¶ 50     Plaintiff asserts that juror Glascott's fiduciary duty to the endowment triggers the same duty to Advocate Medical. Plaintiff's position is based on the factual assertion that the two are a single entity, despite the juror's statements to the contrary.

¶ 51     We recognized in *Cole* that rooting out juror bias necessarily involves assessing the juror's credibility, which is especially significant when, as here, the juror is the sole source of evidence. Regardless of whether the objecting party alleges actual bias or implied bias, the juror's relationship to the parties is a question of fact to be answered from the evidence, and the court's finding regarding the relationship should not be reversed unless it is against the manifest weight of the evidence. In other words, presuming bias based on a juror's status is a question of law, but determining the juror's status remains a question of fact.

¶ 52     We note that plaintiff has not provided a record of the jury selection process, where the trial court presumably questioned the venire about potential biases. The incompleteness of the record will be construed against plaintiff, the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Thus, our review is confined to the midtrial colloquy among the trial judge, the attorneys, and the juror.

¶ 53     The record in this case shows the trial judge heard disorganized and imprecise testimony concerning the juror's connection to defendants. On the one hand, juror Glascott stated he owed a fiduciary duty to the endowment. He said the endowment raises a "pool of money" to expand the "hospital system overall." The endowment "own[s] hospitals" and possibly "earn[s] money in some capacity from the defendant, one of their affiliates." He believed the endowment's purpose was to expand the hospital system by funding the construction of medical buildings.

¶ 54     On the other hand, juror Glascott stated emphatically that he believed Advocate Medical's business operation was separate from the endowment and that "the endowment people are separate from the Medical Group *per se*." Juror Glascott also stated he did not know and had never met the doctor. He stated the endowment did not have anything to do with malpractice liability and the endowment's "decision makers" would not even be aware of plaintiff's action. Juror Glascott

- 13 -

insisted that he believed the verdict would not affect his compensation in any way. This testimony, which the trial court found credible, dispelled the court's concern of implied bias.

¶ 55    Defense counsel represented that the salaries and compensation for Advocate Medical came from Advocate Medical's operations and not from the endowment. Counsel further indicated that this financial information could be found in the physicians' employment contracts. Plaintiff argues the trial court should have disregarded defense counsel's representations. Although the better practice would have been to ask juror Glascott to confirm counsel's statements, the juror did not disagree with them. Moreover, plaintiff's counsel did not object or attempt to refute the comments when the court was deciding whether to excuse the juror.

¶ 56    The trial court found that plaintiff failed to demonstrate that juror Glascott and Advocate Medical had a direct relationship that indicated implied bias as a matter of law. Juror Glascott reported a fiduciary duty to the endowment, but the trial court heard no evidence of a direct link between the juror and Advocate Medical from which bias could be presumed.

¶ 57    Most significantly, juror Glascott was adamant that the endowment and defendants were separate, he did not owe Advocate Medical a fiduciary duty, and the trial's outcome would not affect him financially. We agree with the appellate court that "the evidence was insufficient to demonstrate any express fiduciary relationship between juror Glascott and defendant Advocate Medical." 2020 IL App (1st) 190778, ¶ 63.

¶ 58    Plaintiff had the burden to show bias but did not refute the juror's testimony with evidence of a relationship with Advocate Medical. The trial court's finding of an attenuated relationship between the juror and Advocate Medical was not against the manifest weight of the evidence, and the court's decision not to excuse the juror for implied bias was not erroneous as a matter of law.

¶ 59    Our conclusion is supported by *People v. Porter*, 111 Ill. 2d 386, 396-97 (1986), where the defendant filed a motion for a new trial on the ground that he was denied an impartial jury. He supported the motion with an affidavit claiming a juror knew and went to church with the mother of the victim. *Id.* at 402. When the juror entered

the room for deliberations, she allegedly declared to the rest of the jury, " 'they could vote guilty right then.' " *Id.*

¶ 60 We explained that, to obtain a new trial, the defendant had the burden to support the allegations of his posttrial motion. It was incumbent upon him "to determine the nature of the relationship between the juror and [the victim's] mother," but nothing in the record supported his suspicion that the juror was a friend of the victim's mother. *Id.* at 403. The record showed that the juror "learned or realized" during the trial that she knew the victim's mother as someone who attended the same church that she attended, but the record did not even disclose the name of the victim's mother or whether the juror knew her name. *Id.* at 404. The juror recognized the victim's mother only after the trial had begun, which suggested they did not have a close relationship. *Id.* at 405. Similar to the juror in *Porter*, juror Glascott did not recognize his connection to Advocate Medical until part way through the trial, which indicated an attenuated relationship.

¶ 61 Furthermore, we agree with the appellate court that plaintiff's reliance on *Wehrle*, *Cole*, and *Marcin v. Kipfer*, 117 Ill. App. 3d 1065 (1983), is misplaced. Those decisions illustrate that implied bias exists when there is "a direct relationship between the juror and one of the parties to the litigation." 2020 IL App (1st) 190778, ¶ 64.

¶ 62 The juror in *Wehrle* was "a commissioner whose duty it was to assess benefits against the property of the corporation of which he was an officer and from which he was receiving compensation." *Wehrle*, 340 Ill. at 583. This court held the juror was neither " 'competent' " nor " 'disinterested' " and that his relationship to the party "would seem too clear *** to require discussion." *Id.*

¶ 63 In contrast to the commissioner in *Wehrle*, juror Glascott stated he was not compensated by Advocate Medical. He believed his employment income was derived from his work for the endowment, and he denied owing Advocate Medical a fiduciary duty.

¶ 64 Plaintiff's position is also undermined by *Cole*, 54 Ill. 2d at 411, where the trial court denied the defendant's request to remove a juror for actual bias. This court held the decision was not against the manifest weight of the evidence, despite the juror's prior contacts with several trial participants. *Id.* at 415. At the time of the

*voir dire* examination of the juror, a Springfield businessman, the defense had exhausted its 20 peremptory challenges. *Id.* at 411. The juror disclosed that he knew both the state's attorney and assistant state's attorney. About a year prior to the trial, the juror had talked to one of the deceased men about buying a pool table from him. A witness for the State used to live next door to the juror and had been his family physician. Another witness for the State had a sister who was married to the juror's son. The juror and the sheriff were friends. *Id.*

¶ 65    The juror in *Cole* stated that he had no opinion as to the defendant's guilt, he would disregard anything he might have heard outside the courtroom about the case, and his prior contacts with the state's attorney, assistant state's attorney, the sheriff, and the witnesses would not influence him. *Id.* at 414. The juror stated he would give the testimony of these witnesses no greater weight than he would give the testimony of others. *Id.* "The trial court was apparently convinced of the truth of these statements," and we held that the juror's contacts "were not such as to require us to say that the trial court could not believe his statement on *voir dire* examination." *Id.* at 414-15. In other words, we deferred to the trial court's credibility determination concerning the juror's relationships. Like the contacts between the juror and the prosecution in *Cole*, the relationship between juror Glascott and Advocate Medical was indirect.

¶ 66    In *Marcin*, 117 Ill. App. 3d at 1067, two prospective jurors were identified during *voir dire* as patients of the defendant doctor. The trial court denied the plaintiff's challenge of the jurors for cause. *Id.* The appellate court reversed and remanded for a new trial. *Id.* at 1069. In deciding that the jurors should have been removed for cause, the appellate court focused upon the close relationship between the jurors and the defendant. The relationship between patient and doctor has traditionally been one of trust and confidence. A patient may be reluctant to find against his personal physician for fear of damaging the doctor's reputation. *Id.* at 1067-68. Given this, and considering the nature of the case, the court found that the jurors should have been discharged. *Id.* at 1068.

¶ 67    The *Marcin* court was careful to limit its holding, making it clear that only the very close relationship of the two jurors with their doctor required their exclusion. Recognizing that it would be difficult in some communities to find jurors who did not know a particular physician, the court stated that nothing in its decision should

be taken to mean that others knowing the defendant doctor should be kept off the jury. *Id.*; *cf. Roach v. Springfield Clinic*, 157 Ill. 2d 29, 48 (1993) ("We are unwilling to extend the *Marcin* holding to the spouses of defendant doctors' patients ***."). In contrast to the close patient-doctor relationship in *Marcin*, juror Glascott's relationship to Advocate Medical was so remote that he did not even recall the connection until the trial was more than half completed.

¶ 68    *Marcin*, *Cole*, and *Roach* can be reconciled based on the degree of closeness of the relationships in those cases. They illustrate that an allegation of juror bias depends on the totality of the circumstances. The circumstances presented in this case indicate the court did not err in denying plaintiff's request to remove juror Glascott for implied bias.

¶ 69                                   C. Judicial Notice

¶ 70    Plaintiff next argues the appellate court erred in refusing to take judicial notice of a tax form that Advocate Medical filed with the IRS. The appellate court initially ruled against plaintiff on the juror bias issue when, on May 14, 2020, it issued its decision under Illinois Supreme Court Rule 23(b) (eff. Apr. 1, 2018). Plaintiff filed a petition for rehearing. While the petition was pending, plaintiff filed a motion on August 14, 2020, asking the appellate court to take judicial notice of the form, which purportedly supported plaintiff's allegation of a relationship between juror Glascott and defendants.

¶ 71    The form was a publicly available copy of IRS Form 990 that was completed and submitted to the IRS by "Advocate Health and Hospitals Corp." in Downers Grove for the 2018 tax year. Form 990 is a return that must be filed by certain organizations exempt from federal income tax. Line 10 of part IV of the form asked, "Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments?" The box for "No" was checked.

¶ 72    Plaintiff argues that, because Advocate Medical's return did not report the existence of a separate endowment, the endowment and Advocate Medical must be the same entity. Defendants respond that the document actually shows that Advocate Medical did not have an endowment at all, either separate or direct.

Defendants infer from the form that the assets in the endowment must have been held by an organization other than Advocate Medical. The parties' opposing interpretations of the return illustrate the complexity of the relationships among the organizations under the Advocate umbrella and why we defer to the trial judge's findings on the attenuated relationship between juror Glascott and defendants.

¶ 73    On August 31, 2020, the appellate court denied the petition for rehearing and entered an order finding that plaintiff had forfeited his request for judicial notice of the tax return. The court concluded that the "the document in question that this Court is now being asked to consider could have easily been acquired at the time of the hearing and considered by the trial court." The court also observed that plaintiff failed to cite authority allowing a party to supplement his argument by requesting a reviewing court to take judicial notice of evidentiary matters that were not presented to the trial court. See *People v. James*, 2019 IL App (1st) 170594 (appellate court declined to take judicial notice of Department of Corrections records that were not properly presented as evidence at trial).

¶ 74    The record supports the appellate court's ruling that plaintiff forfeited his argument concerning Advocate Medical's 2018 Form 990. In the trial court, plaintiff could have supplemented his motion to reconsider with a form filed by Advocate Medical in a prior year. In fact, defendants point out that plaintiff made a reference in the trial court to one of Advocate Medical's Form 990 returns as far back as November 2013.

¶ 75    Furthermore, the 2018 Form 990 was signed on November 15, 2019, which predated several of plaintiff's filings in the appellate court. Plaintiff filed his reply brief on March 13, 2020, and the appellate court's original decision was entered on May 14, 2020. Plaintiff filed his petition for rehearing on June 24, 2020, but did not mention the tax return. Plaintiff finally asked the appellate court to take judicial notice of the return on August 14, 2020, after the court had already ruled on the juror bias issue.

¶ 76    Plaintiff forfeited his argument concerning the tax document by failing to raise it in the trial court, and he compounded the forfeiture by waiting until the eleventh hour to present it to the appellate court. See *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004) (issues not raised in the trial court are forfeited and may not be raised on appeal). The forfeiture obviates the need to address whether the tax

document is subject to judicial notice.

¶ 77                                    III. CONCLUSION

¶ 78         The trial court did not err in ruling that the juror did not owe Advocate Medical
a fiduciary duty and did not have any other direct relationship with defendants that
would create a presumption of juror bias as a matter of law. For the preceding
reasons, the judgments of the appellate court and circuit court are affirmed.

¶ 79         Judgments affirmed.

¶ 80         JUSTICE NEVILLE took no part in the consideration or decision of this case.