2024 IL App (2d) 230107-U
No. 2-23-0107
Order filed January 3, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-MR-153 |
| $5786 UNITED STATES CURRENCY, | ) ) | |
| Defendant | ) ) | Honorable Robert P. Pilmer, |
| (Quinton J. McKee, Claimant-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the State proceeded with nonjudicial forfeiture of seized funds and the trial court never obtained jurisdiction over the forfeiture proceedings, the court properly denied claimant's motion for return of the seized funds, filed more than three years after the State declared the funds forfeited.

¶ 2   *Pro se* claimant, Quinton J. McKee, appeals from the trial court's denial of his motion for

the return of $5786, which had been declared forfeited by the State over three years earlier under

the provisions of the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.*

(West 2018)) governing nonjudicial forfeiture.  However, because McKee never filed a verified

claim as required under the Forfeiture Act, the State was entitled to proceed with nonjudicial forfeiture. Thus, absent the filing of a verified *in rem* complaint by the State, the trial court never obtained jurisdiction over the forfeiture proceedings. Accordingly, we affirm the trial court's denial of McKee's motion for return of the funds.

¶ 3                                I. BACKGROUND

¶ 4        On July 26, 2019, the Kendall County Cooperative Police Assistance Team seized $5786 in United States Currency from Quinton J. McKee.

¶ 5        On July 31, 2019, the State filed a "Request for Preliminary Review to Determine Probable Cause for Forfeiture," asking the trial court to find that the seized funds may be subject to forfeiture. Attached as exhibit A was a "Kendall County Law Enforcement Synopsis of Forfeiture," which provided the factual basis of the seizure. It also named McKee as the owner of the currency and listed his address as "1311 Idabright Dr., Plainfield, IL 60586." According to the exhibit, during the execution of a search warrant at a Montgomery address, McKee was located in the basement with a bag of cannabis. Near McKee was his backpack, which contained, among other things, $5786 and three bags of cannabis. McKee later admitted that he sold cannabis and that approximately $500 to $1000 of the currency in the backpack was proceeds from such sales.

¶ 6        Also on July 31, 2019, the State filed a "Notice of State's Intention to Seek Preliminary Review," along with a "Proof of Service." The Proof of Service certified that the Notice was sent "via certified mail" to McKee at the Idabright address by "depositing same in the U.S. Mail Box, in the City of Yorkville, Kendall County, Illinois *** on the 31[st] day of July, 2019, *** at or before 5:00 p.m."

¶ 7        On August 8, 2019, the trial court entered an "Order Finding Probable Cause." The order indicated that "the Claimant" was "given due notice of these proceedings" and provided: "This

Court, being fully advised and satisfied in the premises, finds that probable cause exists that the property described as $5,786.00 *** seized from *** McKee *** may be subject to forfeiture."[1]

¶ 8    The State claims in its response brief that, "[o]n August 12, 2019, the Kendall County State's Attorney's Office sent [McKee] a Notice of Pending Forfeiture to the address listed on claimant's license: 1311 Idabright Drive, Plainville [*sic*], IL 60586."  The Notice of Pending Forfeiture is not contained in the record.  (The State's record cite is to the "new case filing sheet.")

¶ 9    On September 26, 2019, McKee filed a *pro se* "motion to [r]eturn property of $5,786."  In it, he claimed that (1) the money seized was money he and the mother of his two children had saved to find housing, (2) they were about to move into an apartment, and (3) they were now homeless.  He attached pay stubs from his employer showing his 2018 and 2019 earnings.

¶ 10    On October 29, 2019, the trial court held a hearing on McKee's motion for return of the funds.  At the outset of the hearing, the court stated: "[A]s I recall, Mr. McKee has the burden on this; is that correct?"  The State replied:

> "Well, at this point, [J]udge, pursuant to statute, he has not complied with [section] 150/6 [of the Forfeiture Act (725 ILCS 150/6 (West 2018))].
>
> He's not filed a verified complaint or a verified claim, not set forth any of the statutory guidelines on why he should have his property returned.
>
> So I think what we're doing is a little premature but we can proceed on his motion."

The court responded, "[o]kay," and then directed McKee to tell the court why he thought that the money should be returned.

---

[1]The record does not contain a report of this proceeding.

¶ 11     Thereafter, McKee explained that the money was money that he and the mother of his children had saved to provide for their children.  He testified as to his employment, his earnings, and his manner of saving.  He admitted that he was currently on probation for selling cannabis, but he denied that the $5786 seized was from selling cannabis.

¶ 12     The trial court denied McKee's motion, finding that McKee did not "sustain [his] burden of proof to show why [he] should be able to get *** the funds back."

¶ 13     The State claims in its response brief that, on October 30, 2019, it sent a copy of a "Declaration of Forfeiture" to McKee.  The State does not support this claim with a citation to the record, and we cannot locate said document in the record.

¶ 14     More than three years later, following a February 8, 2023, jury trial, McKee was found not guilty (in case No. 19-CF-235) of the charges related to the seizure of the funds (720 ILCS 550/5(d) (West 2018)).

¶ 15     On March 7, 2023, McKee filed the motion at issue here, seeking return of the seized funds. In it, McKee argued that the money should be returned because (1) he was found not guilty in case No. 19-CF-235, (2) there was no proof that the money had been derived from any illegal activity, and (3) the money was employment income.  The State did not file a response.

¶ 16     On March 23, 2023, McKee and the State appeared before the trial court.  The court informed the parties that it had reviewed McKee's motion and prepared a written order denying the motion. The court then advised McKee that he would have 30 days to appeal.  Thereafter, the following colloquy took place:

        "[McKEE]: Why was it denied?

THE COURT: Under the forfeiture statute, once the Court makes a finding of probable cause, then the matter's outside of the Court's control. It's up to the State's Attorney's Office to proceed on what's called a nonjudicial forfeiture.

So, once they do that, they send notice in certain things. In this case you would have needed to do and file a verified claim.

[McKEE]: What's that?

THE COURT: When you file a motion, you get a return.

[McKEE]: So why is the paper not being sent to my house if you're saying I have to claim it in 45 days? They don't have any of that file. They sent it to my house. None of this is on file.

They know my August date that was for probable cause hearing, and after that they sent the paperwork to my house saying I had to claim the money within 45 days.

THE COURT: Well, I've made my ruling. Whether I like that statute or not, I have to follow the statute. You'll get a copy of the court order."

¶ 17 That same day, the trial court entered its written order stating that it "denied" McKee's motion. In the written order, the court made certain findings of fact. The court found, among other things, that

"on August 12, 2019, consistent with the provisions of the [Forfeiture] Act [(725 ILCS 150/1 *et seq.* (West 2018))], the Kendall County State's Attorney's Office sent Mr. McKee a Notice of Pending Forfeiture. At the top of the notice and in the body of the notice, the State correctly identified the sum as $5,786.00, although in a description of the property which the State was seeking to forfeit it described the property as $1,181.00 in the United

State's (*sic*) Currency. Given that the correct amount was identified twice on the Notice

of Pending Forfeiture, the court finds that this error in description is of no effect.

> The Notice of Pending Forfeiture provides a section entitled 'Summary of Procedural Rights' informing, in this instance, Mr. McKee that he must file a verified claim for the return of the property with the Kendall County State's Attorney if he wishes to seek return of these funds. The notice advises the recipient that a verified claim must be filed within 45 days from the receipt of the mailing of the notice."

In addition, the court found that

> "[o]n *** October 30, 2019, the State's Attorney sent a copy of the Declaration of Forfeiture to Mr. McKee, in compliance with the provisions of the [Forfeiture] Act. Under the provisions of the [Forfeiture] Act, the property consisting of the sum of $5,786.00 in U.S. currency was deemed to be forfeited."

¶ 18 The trial court concluded that, because McKee failed to comply with the provisions of the Forfeiture Act by failing to file a verified claim, the State was entitled to proceed with nonjudicial forfeiture of the funds. Thus, because the State complied with all the applicable provisions, the court "denied" McKee's motion without considering the merits. The court further noted that, "although not raised [by the parties], under the [Forfeiture] Act, upon the entry of an order finding probable cause, the court loses jurisdiction to make any further determination regarding the disposition of the subject of this proceeding."

¶ 19 McKee filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21 On appeal, McKee contends, generally, that he was denied due process because he did not receive the August 12, 2019, Notice of Pending Forfeiture or a copy of the October 30, 2019,

Declaration of Forfeiture. According to McKee, the State's Notice of Pending Forfeiture was inadequate as it was sent to an address from which McKee was barred due to an order of protection (of which, he claims, the State should have been aware). He argues that, had he received the Notice of Pending Forfeiture, he would not have filed the September 26, 2019, motion seeking return of the funds; instead, he would have filed a verified claim. He further argues that, had he received the Declaration of Forfeiture, he would not have waited until after his trial to file the March 7, 2023, motion for return of the funds, which is at issue here. McKee claims that his attorney in the criminal matter told him that the funds were seized only until the conclusion of the criminal proceedings. In addition, McKee argues that the trial court erred in ruling on his September 26, 2019, motion for return of the funds, because the court lost jurisdiction over the matter upon entry of the August 8, 2019, order finding probable cause. He asks that we order the funds returned or allow him to file a verified claim for return of the funds.

¶ 22    The State responds, first, that we do not have jurisdiction over this appeal because McKee failed to file a verified claim, a prerequisite for the State to file a complaint for forfeiture to initiate judicial forfeiture proceedings and vest the trial court with jurisdiction under the Forfeiture Act. Alternatively, the State argues that it properly served McKee with notice of the pending forfeiture proceedings.

¶ 23    Initially, we note that McKee's brief on appeal violates the provisions of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which governs the contents of an appellant's brief. Rule 341(h)(6) requires that an appellant's statement of facts be supported by citations to the record. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Rule 341(h)(7) requires that the appellant's argument also be supported by citations to the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Here, McKee used the form brief provided for *pro se* appellants by our supreme court. The form brief

contains marginal notes reminding the appellant to provide record citations and referencing the relevant supreme court rule. Nonetheless, McKee failed to include a single citation to the record.

¶ 24 McKee's *pro se* status does not relieve him of the obligation to follow the supreme court rules for appellate briefing. See *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. "Illinois Supreme Court rules are not suggestions; they have the force of law and must be followed." *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37. If a brief fails to comply with the rules and the improprieties hinder our review, we have the discretion to strike portions of the brief or dismiss the appeal. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶¶ 9, 15. Here, however, because the record is relatively simple, McKee's violations do not hinder our review to the point that dismissal of the appeal would be appropriate. However, we admonish McKee to ensure his compliance with the supreme court rules in any future submissions.

¶ 25 Whether a court has jurisdiction to consider an appeal presents a legal question to be determined *de novo*. See *In re Marriage of Teymour*, 2017 IL App (1st) 161091, ¶ 10. We note that, in his jurisdictional statement, McKee asserts that we have jurisdiction under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), which provides:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both."

Rule 304(a) simply does not apply here. In any event, for the following reasons, we hold that we do not have jurisdiction to consider the merits of McKee's claim.

¶ 26    Resolving this question requires a review of the relevant provisions of the Forfeiture Act. The General Assembly enacted the Forfeiture Act to deter violations of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2018)) and certain other drug control acts.  See 725 ILCS 150/2, 3 (West 2018); *People ex rel. Kelly v. Sixteen Thousand Five Hundred Dollars ($16,500) United States Currency*, 2014 IL App (5th) 130075, ¶ 17.  It established "uniform procedures for the seizure and forfeiture of drug-related assets."  *Id.*

¶ 27    Section 3.1(c)(4) of the Forfeiture Act (725 ILCS 150/3.1(c)(4) (West 2018)) states:

> "(C) Personal property subject to forfeiture under [any of the relevant acts] may be seized by *** any peace officer without process:
>
> * * *
>
> (4) if there is probable cause to believe that the property is subject to forfeiture under [any of the relevant acts], and the property is seized under circumstances in which a warrantless seizure or arrest would be reasonable[.]"

Section 3.1(e) provides that, "[a]fter seizure under this Section, notice shall be given to all known interest holders that forfeiture proceedings, including a preliminary review, may be instituted and the proceedings may be instituted under [the] [Forfeiture] Act." *Id.* § 3.1(e).

¶ 28    Section 3.5 of the Forfeiture Act governs the "[p]reliminary review." *Id.* § 3.5.  It provides that, "[w]ithin 14 days of the seizure, the State shall seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture." *Id.* § 3.5(a); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 20.  Under section 3.5(e), "[u]pon making a finding of probable cause as required under this Section, the circuit court shall order the property subject to the provisions of the applicable forfeiture Act held until the conclusion of any

forfeiture proceedings." 725 ILCS 150/3.5(e) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 20.

¶ 29 Section 6 of the Forfeiture Act establishes nonjudicial forfeiture proceedings for "non-real property that does not exceed $150,000 in value." 725 ILCS 150/6 (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 21. Under section 6(A),

> "[i]f, after review of the facts surrounding the seizure, the State's Attorney is of the opinion that the seized property is subject to forfeiture, then, within 28 days of the receipt of notice of seizure from the seizing agency, the State's Attorney shall cause notice of pending forfeiture to be given to the owner of the property and all known interest holders of the property in accordance with Section 4 of [the] [Forfeiture] Act." 725 ILCS 150/6(A) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 21.

Thereafter, "[a]ny person claiming an interest in property which is the subject of [the] notice *** may, within 45 days after the effective date of notice *** file a verified claim with the State's Attorney expressing his or her interest in the property." 725 ILCS 150/6(C)(1) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 22. The verified claim must contain certain elements. 725 ILCS 150/6(C)(1)(i) through (viii) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 22.

¶ 30 If a claimant files a verified claim, "the State's Attorney shall institute judicial *in rem* forfeiture proceedings within 28 days after receipt of the claim." 725 ILCS 150/6(C)(2) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 22. However, if no verified claim is timely filed,

> "the State's Attorney shall declare the property forfeited and shall promptly notify the owner and all known interest holders of the property and the Director of the Illinois

Department of State Police of the declaration of forfeiture and the Director shall dispose of the property in accordance with the law." 725 ILCS 150/6(D) (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 22.

¶ 31    After property is declared forfeited under section 6(D) of the Forfeiture Act, anyone with an interest in the property has an additional opportunity to avoid forfeiture. *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 23. Section 14 of the Forfeiture Act provides that anyone with an interest in forfeited property

"may, within 30 days of the effective date of the notice of the declaration of forfeiture, file a claim as described in subsection (C) of Section 6 of [the] [Forfeiture] Act. If a claim is filed under this Section, then the procedures described in Section 9 of [the] [Forfeiture] Act shall apply." 725 ILCS 150/14 (West 2018); *People ex rel. Kelly*, 2014 IL App (5th) 130075, ¶ 23.

¶ 32    Section 9 of the Forfeiture Act governs judicial *in rem* forfeiture proceedings. 725 ILCS 150/9 (West 2018); see *People v. One Thousand Two Hundred Forty Dollars ($1,240) United States Currency*, 396 Ill. App. 3d 665, 670 (2009). These proceedings apply if property seized "is non-real property that exceeds $150,000 in value excluding the value of any conveyance, or is real property, *or a claimant has filed a claim under subsection (C) of Section 6 of [the] [Forfeiture] Act*[.]" (Emphasis added.) 725 ILCS 150/9 (West 2018). The State institutes judicial forfeiture "by filing a verified complaint for forfeiture in the circuit court within whose jurisdiction the seizure occurred." *Id.* § 9(A). The verified complaint must be filed "not later than 28 days after the filing of a verified claim by a claimant if the property was acted upon under a non-judicial forfeiture action[.]" *Id.* Thereafter, a claimant has 45 days to file an answer. *Id.* § 9(C), (E).

¶ 33   Here, McKee's funds were seized on July 26, 2019. Per section 3.5(a) of the Forfeiture Act, on July 31, 2019—within 14 days of the seizure—the State sought a preliminary determination of whether there was probable cause that the funds may be subject to forfeiture. See *id.* § 3.5(a). Pursuant to section 3.1(e) of the Forfeiture Act, the State served McKee with notice of its intent to seek the preliminary review. See *id.* § 3.1(e).

¶ 34   On August 8, 2019, following a probable cause hearing (at which McKee was not present), in accordance with section 3.5(e) of the Forfeiture Act, the trial court entered an order finding probable cause. See *id.* § 3.5(e). The order indicated that "the Claimant" was "given due notice of these proceedings" and provided: "This Court, being fully advised and satisfied in the premises, finds that probable cause exists that the property described as $5,786.00 *** may be subject to forfeiture." Thus, the funds were "subject to the provisions of the applicable forfeiture Act *held until the conclusion of any forfeiture proceedings*." (Emphasis added.) *Id.* § 3.5(e).

¶ 35   Thereafter, because the funds seized did "not exceed $150,000 in value," section 6 of the Forfeiture Act, governing nonjudicial forfeiture proceedings, applied. See *id.* § 6. Under section 6(A) of the Forfeiture Act, the State had 28 days from the receipt of the notice of seizure from the seizing agency to provide McKee with notice of pending forfeiture "in accordance with Section 4 of [the] [Forfeiture] Act." See *id.* § 6(A). As noted, the State claims that, on August 12, 2019 (within 28 days of the seizure and after the probable cause determination), it sent the Notice of Pending Forfeiture to McKee. McKee then had "45 days after the effective date of notice ***, [to] file a verified claim with the State's Attorney." See *id.* § 6(C)(1). McKee did not do so; instead, he filed, on September 26, 2019, a motion seeking the return of the funds, which the trial court heard and denied.

¶ 36    Had McKee filed a verified claim, the State would have been required to institute judicial *in rem* forfeiture proceedings under section 9 of the Forfeiture Act by filing a verified *in rem* complaint for forfeiture "not later than 28 days after the filing of [the] verified claim."  See *id.* § 9(A).  Upon the filing of the State's verified complaint for forfeiture, the trial court would have obtained jurisdiction over the forfeiture proceedings.  See *One Thousand Two Hundred Forty Dollars ($1,240) United States Currency*, 396 Ill. App. 3d at 671-72 (the trial court lacked jurisdiction over forfeiture proceedings because the State failed to file verified complaints for judicial forfeiture despite receiving timely verified claims for the return of property).

¶ 37    Here, because McKee did not file a verified claim within 45 days of August 12, 2019, as required under section 6 of the Forfeiture Act, the State was entitled to declare the funds forfeited without instituting judicial proceedings.  According to the State, on October 30, 2019, it declared the funds forfeited and sent the required notice to McKee.  This was all done outside the jurisdiction of the trial court.  Unlike with judicial *in rem* forfeiture proceedings, there does not appear to be any requirement of further court action in a nonjudicial forfeiture proceeding after the State declares the property forfeited.  Compare 725 ILCS 150/6(D) (West 2018) (if no verified claim is timely filed, "the State's Attorney shall declare the property forfeited and shall promptly notify the owner and all known interest holders of the property and the Director of the Illinois Department of State Police of the declaration of forfeiture and the Director shall dispose of the property in accordance with law"), with 725 ILCS 150/9(H) (West 2018) ("If the State *** meet[s] its burden of proof [at trial on a forfeiture complaint], the court shall order all property forfeited to the State.").

¶ 38    Thus, once those nonjudicial forfeiture proceedings concluded, McKee's only recourse was to challenge the forfeiture within 30 days by filing a verified claim.  See *id.* § 150/14.  He did not

do so. Because the trial court had no jurisdiction to entertain McKee's March 7, 2023, motion, we have no authority to consider the motion's merits; we may only consider the court's lack of jurisdiction. See *People v. Flowers*, 208 Ill. 2d 291, 307 (2003) (where the trial court had no jurisdiction to consider a filing, "[t]he only matter properly before the appellate court [is] the [trial] court lack of jurisdiction").

¶ 39    In denying McKee's March 7, 2023, motion, the trial court essentially concluded that it did not have jurisdiction to reach the merits of his claims. It found that McKee failed to comply with the provisions of the Forfeiture Act by failing to file a verified claim and that, thus, the State properly proceeded with nonjudicial forfeiture under section 6 of the Forfeiture Act. As a result, as we explained above, the court never obtained jurisdiction over the forfeiture proceedings.[2] We note that the trial court stated that, upon entry of the probable cause order, it "los[t] jurisdiction" to make any further determination regarding the disposition of the funds. However, regardless of whether it lost jurisdiction upon the entry of that order (or sometime thereafter), any jurisdiction it had concerning that preliminary probable cause determination certainly lapsed long before the motion at issue here was filed on March 7, 2023. Once a trial court's jurisdiction over an underlying case has lapsed, the court loses its authority to address any subsequent motions on the merits. *Id.* at 306. The only continuing power the court possesses over the case at that point is "limited to enforcement of the judgment or correction of clerical errors or matters of form so that

---

[2]Technically, the trial should have *dismissed* McKee's motion rather than deny it. See *People v. Hood*, 387 Ill. App. 3d 380, 387 (2008). Nevertheless, its terminology did not change the substance of its ruling, which correctly did not consider the merits of McKee's motion. See *id.*

the record conform[s] to the judgment actually rendered" (*i.e.*, *nunc pro tunc* corrections to the record). *Id.* at 306-07. This limited power would not have allowed the court to exercise jurisdiction over McKee's March 7, 2023, motion.

¶ 40 To be sure, McKee claims that he never received the August 12, 2019, Notice of Pending Forfeiture or the October 30, 2019, Declaration of Forfeiture. We note, however, that although neither document appears in the record, the trial court's March 23, 2023, order contained the following finding of fact: "[O]n August 12, 2019, consistent with the provision of the [Forfeiture] Act, the Kendall County State's Attorney's Office sent Mr. McKee a Notice of Pending Forfeiture." The court apparently had a copy of the notice because the court specifically referenced its contents. In addition, the court found that,

> "[o]n *** October 30, 2019, the State's Attorney sent a copy of the Declaration of Forfeiture to Mr. McKee, in compliance with the provisions of the [Forfeiture] Act. Under the provisions of the [Forfeiture] Act, the property consisting of the sum of $5,786.00 in U.S. currency was deemed to be forfeited."

Thus, the court's factual findings support the conclusion that—because McKee never filed a verified claim, which would have required the State to file a verified complaint for forfeiture—the court did not have jurisdiction over McKee's motion challenging the nonjudicial forfeiture.

¶ 41 Finally, McKee argues that the trial court erred in ruling on his September 26, 2019, motion for return of the funds because it lost jurisdiction over the matter upon the entry of the order finding probable cause (which, we note, essentially amounts to a concession that we do not have jurisdiction over the present matter). However, even if the trial court erred in considering the merits of the September 26, 2019, motion, any claim McKee would have had as to that error is not properly before us for the reasons already stated.

¶ 42                                    III. CONCLUSION

¶ 43     For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 44     Affirmed.