2024 IL App (1st) 231382-U

Fourth Division
Filed February 22, 2024

No. 1-23-1382

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST DISTRICT**

|  |  |  |
|---|---|---|
| SUFYAN HASSAN, | ) | Appeal from the |
|     Plaintiff and Counterdefendant-Appellant, | ) | Circuit Court of Cook County |
| v. | ) | No. 2020 CH 05785 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) | The Honorable Joel Chupack, Judge, presiding. |
|     Defendant and Counterplaintiff-Appellee. | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The trial court's order granting the motion to stay arbitration and denying the motion to compel arbitration is reversed, and the cause remanded, where State Farm did not waive its right to contest coverage but there remained an unresolved factual question as to whether it was estopped from doing so. The appeals from the trial court's orders denying Hassan's motion to strike affirmative defenses and motion to dismiss counterclaim are dismissed for lack of jurisdiction.

¶ 2   Plaintiff Sufyan Hassan appeals, under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), the trial court's interlocutory orders (1) staying arbitration and denying his motion to compel arbitration, (2) denying his motion to strike defendant State Farm Mutual Automobile Insurance Company's (State Farm) affirmative defenses, and (3) denying his motion to dismiss State Farm's counterclaim. Because there remains an unresolved question of fact as to whether

State Farm should be estopped from contesting coverage, we reverse the order staying arbitration and declining to compel arbitration and remand for further proceedings in accordance with section 2 of the Uniform Arbitration Act. 710 ILCS 5/2 (West 2022). However, we find that we lack jurisdiction to review the trial court's orders denying Hassan's motion to strike affirmative defenses and motion to dismiss counterclaim, which are neither independently appealable under Rule 307 nor intertwined with the arbitration order, so we dismiss his appeal from those orders.

¶ 3                                    I.  BACKGROUND

¶ 4                              A.  The Insurance Policy

¶ 5        This case involves an automobile insurance policy issued by State Farm to Hassan (the Policy) that was effective from October 26, 2017, to April 26, 2018, and covered a 2007 Cadillac Escalade owned by Hassan. The Policy included coverage for liability, medical payments (limited to $10,000 per person), physical damage (including related expenses such as emergency road service, car rentals, and travel), and uninsured and underinsured motor vehicles. Under the uninsured-motorist coverage, which was required by section 143a(1) of the Illinois Insurance Code (215 ILCS 5/143a(1) (West 2018)), State Farm agreed to pay Hassan compensatory damages for bodily injuries sustained in an accident caused by a vehicle that either was not covered by liability insurance or whose driver or owner could not be identified. The Policy required binding arbitration of any disputes about two specific questions that might arise under the uninsured-motorist coverage:

> "a. Is the *insured* legally entitled to recover compensatory
>
> damages from the owner or driver of the *uninsured motor vehicle*?
>
> b.  *** [W]hat is the amount of the compensatory damages that
>
> the *insured* is legally entitled to recover from the owner or driver of
>
> the *uninsured motor vehicle*?" (Italics in original.)

The arbitration agreement further provided that arbitrators would "have no authority to decide any questions of law."

¶ 6    Under the Policy, any person defined as an *insured* had a duty to "submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as [State Farm] require[s]." With respect to the uninsured motor vehicle coverage, the term *insured* included (among others) Hassan as the policyholder named on the declarations page, any spouse who "resid[ed] primarily with" him, and "any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured*." (Italics in original.) The Policy also contained a provision entitled "Concealment or Fraud," which stated as follows:

> "There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy." (Italics in original.)

¶ 7                                  B.  Hassan's Insurance Claim

¶ 8    In February 2018, Hassan filed a claim under the Policy for losses stemming from an alleged hit-and-run collision on February 12, 2018. His claim involved physical damage to the car as well as physical injuries to his person and associated medical expenses sustained during the collision, including a torn distal bicep tendon in his left arm, which required surgery.

¶ 9    Materials in the record show that State Farm initially denied the claim as it pertained to physical damage to the insured vehicle under the belief that the damage pre-existed the alleged collision, but it later reversed course and paid for repairs. Following those repairs, Hassan continued experiencing problems with an oil-pressure sensor and a crash sensor, but State Farm declined to pay to fix those problems after determining that they were not related to the February 12, 2018 incident. The record does not show that State Farm took any action on the claim as it pertained to medical expenses or uninsured-motorist coverage at that time.

¶ 10   At the time of the alleged hit-and-run collision, Hassan was married to Lieim Yusuf. In July 2018, Yusuf filed for divorce. Several weeks later, her divorce attorney notified the attorney Hassan had retained in connection with his insurance claim that any "monetary award" in his "personal

injury case" would be considered a marital asset. Then, in November 2018, Yusuf contacted State Farm and alleged that Hassan had actually torn his tendon while lifting weights about a week before the alleged hit-and-run.

¶ 11    In January 2019, State Farm sent Hassan a reservation-of-rights letter. The letter, which was signed by a claim specialist at State Farm, stated:

> "State Farm *** may have no duty to pay, indemnify, defend, or otherwise perform under the policy *** because:
>
> > A question exists as to whether or not there has been a material misrepresentation as to the facts, circumstances and alleged injuries surrounding this loss.
> >
> > It is questionable whether the injury was caused by a hit-and-run motor vehicle, so as to qualify as an uninsured motor vehicle under the Uninsured Motor Vehicle coverage.
>
> For these reason(s), and for any other reasons which may become known, State Farm *** reserves all rights under the policy, including the right to deny coverage in its entirety.
>
> ***
>
> Any action taken by State Farm *** or any of its authorized representatives to investigate, evaluate, pay, defend, or otherwise adjust any claim arising out of the alleged loss shall not waive any of the terms or conditions of the State Farm policy of insurance ***, nor shall such action waive any of your rights under the policy."

The letter also stated that State Farm did "not intend *** to waive any policy defenses not stated above" and it purported to "specifically reserve[] its right to assert such additional policy defenses at any time."

¶ 12    About three weeks later, Hassan's attorney sent a letter to State Farm asserting that the reservation-of-rights letter was deficient because the grounds stated in the letter for reserving rights "lack[ed] any specificity." He noted that the first ground given in the reservation-of-rights letter did not "describe with any particularity *** the potential misrepresentations" and that the second ground was merely "unsupported questioning of established facts." The record does not contain a response from State Farm.

¶ 13    Within a week of Hassan responding to the reservation-of-rights letter, State Farm requested that he submit to an examination under oath as required by the Policy. On February 24, 2019, counsel for State Farm sent a letter to Hassan's attorney reflecting that Hassan had agreed to sit for the examination under oath. The letter also anticipated that the claim could go to arbitration:

> "In the event State Farm and Mr. Hassan are unable to agree on the appropriate measure of damages upon completion of State Farm's investigation of this claim, and assuming no coverage defenses, State Farm is willing to proceed to binding arbitration as detailed in the applicable policy."

The letter goes on to detail State Farm's position about what the appropriate forum for arbitration would be under the Policy.

¶ 14    That same day, State Farm received a report it had solicited from a firm called Crash Data Services, LLC, concerning the cause of the damage to Hassan's Escalade. The report concluded that, based on the shape, location, and nature of the damage and the absence of paint transfer, the Escalade had been "backed into a tall, rounded, concrete barrier," not struck by another vehicle. The report described Hassan's account of a hit-and-run collision as "patently false."

¶ 15    In April 2019, Hassan, as required by the Policy, submitted to an examination under oath. He testified that, on February 12, 2018, he was parked on the side of the road when a white pick-up truck struck him from behind and then drove away. He said that, at the moment of impact, he had his left hand on the steering wheel and was reaching toward the back seat to retrieve his phone,

which had fallen to the floor. He attributed his bicep injury to the collision, and he denied Yusuf's allegation that he had injured his bicep lifting weights. After the examination, State Farm's attorney sent an email to Hassan's attorney stating that his "current view" was that he did not "put weight in that one-time call by Ms. Yusuf" in view of the "very nasty divorce" and her position that the claim was a marital asset.

¶ 16    On July 30, 2019, counsel for State Farm sent an email to Hassan's lawyer suggesting that they "move this case forward toward arbitration" while "wait[ing] on authority" from State Farm and asking whether he was "free to discuss evidentiary stipulations and arbitration scheduling" later that day. On August 11, State Farm's attorney advised counsel for Hassan that he would accept service of Hassan's arbitration demand. Hassan filed the arbitration demand with the American Arbitration Association (AAA) on August 20, 2019, and served it on State Farm via email. Counsel for State Farm acknowledged receipt the following morning. AAA sent a letter acknowledging receipt of the demand to both parties' attorneys on August 23. The demand itself is not in the record.

¶ 17    On August 27, 2019, Yusuf forwarded to State Farm a series of emails she had exchanged with Hassan on February 6, 2018, about one week before the alleged hit-and-run, about an unspecified injury Hassan was suffering from.

¶ 18    Materials in the record indicate that State Farm paid AAA's docketing fee on October 9, 2019. The arbitrator was selected on October 24 and formally appointed on October 30. State Farm was given until November 19 to indicate whether Hassan had complied with all conditions precedent, but it did not submit a response.

¶ 19    In early December 2019, at the request of the arbitrator, the parties submitted emails stating their respective positions on State Farm's intent to take a statement from Yusuf under oath. State Farm's submission stated, in relevant part:

> "State Farm's claim investigation is ongoing, and that investigation now appears ready to encompass the statement of Mr.

Hassan's estranged wife, who has come forward recently with documentary evidence which, if true, casts the legitimacy of Mr. Hassan's claim into doubt. I have shared that information with counsel and we have discussed it.

Counsel points out that AAA rules don't entitle a party to pre-hearing depositions, but that does not foreclose State Farm from taking this statement if the witness is willing to appear. Even when an arbitration of a UM claim is on track for a future hearing via AAA, the terms of the policy still govern the parties while the claim investigation is ongoing [citation]."

Hassan's submission acknowledged that he had no basis for preventing State Farm from taking a voluntary statement from Yusuf. He maintained, however, that State Farm was not entitled to take a statement under oath under the terms of the Policy because she did not qualify as an "insured." Hassan further stated:

"Ms. Yusuf provided alleged contradictory information directly to State Farm by email dated August 27, 2019, which counsel provided to me November 12, 2019. State Farm has had plenty of time to speak with Ms. Yusuf. If State Farm wants to take her statement, it should do so soon. That does not impact this proceeding if it will not be a deposition. I do not intend to attend any statement because there would be no point without cross-examination, which would not be proper under either a statement nor an examination under oath. Ms. Yusuf should be presented at the arbitration if State Farm chooses to rely on her information."

Hassan also argued that he would object to "much of her potential testimony" based on the spousal-communications privilege (see 735 ILCS 5/8-801 (West 2018)) and that discovery depositions of

third parties were not allowed under the AAA rules. The record does not disclose what, if anything, the arbitrator did in response to these submissions.

¶ 20    Yusuf submitted to a voluntary examination under oath on January 3, 2020. The examination was conducted by counsel for State Farm. Neither Hassan nor a representative was present. State Farm's attorney noted for the record that Hassan's lawyer had declined an invitation to attend. According to the affidavit of Hassan's attorney, he chose not to attend because Yusuf refused to go forward with the examination if Hassan was there, a condition that would have impaired his ability to cross-examine her. Yusuf testified that, several days before the alleged hit-and-run, Hassan told her that he had injured his arm lifting weights and showed her his bicep injury. The day after that, she overheard Hassan telling a friend on the telephone that he was planning to attribute his injury and an electrical problem he was having with his car to an accident so he could recover from his insurance company.

¶ 21                                C.  Hassan's Complaint

¶ 22    On February 14, 2020, Hassan filed a three-count complaint against State Farm in the Circuit Court of Lake County. Count I alleged that, contrary to the insurance policy's arbitration, State Farm was refusing to arbitrate his claim under the uninsured-motorist coverage. It sought specific performance of State Farm's arbitration obligation. Count II alleged that State Farm had breached the Policy by refusing to pay out the full value of Hassan's claim for vehicle damage. It prayed for damages. Count III alleged that State Farm had engaged in unreasonable and vexatious actions in connection with the claims arising from the alleged hit-and-run. It sought an award of attorney fees under section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2020).

¶ 23    At the time Hassan filed suit, State Farm had not formally denied the uninsured-motorist claim, but it did so less than one week later. On February 20, State Farm sent Hassan (courtesy of his attorney) a letter notifying him that it was denying coverage on the uninsured-motorist claim. The letter identified four grounds for its denial of coverage. First, it stated that the alleged hit-and-run was not a "loss" or an "accident" under the Policy. Second, it stated that Hassan had violated

the concealment-or-fraud provision of the Policy by "materially misrepresenting the facts and circumstances" surrounding the alleged hit-and-run. Third, it stated that the medical-payments coverage did not apply because Hassan's medical expenses were not the result of an injury sustained in the alleged hit-and-run. Fourth, it stated that the uninsured-motorist coverage did not apply because his injuries were not the result of a hit and run.

¶ 24     In May 2020, State Farm filed a motion to transfer based on *forum non conveniens*. While that motion was still pending, in July 2020, Hassan filed a motion to compel arbitration. The court granted State Farm's transfer motion in August 2020, and the case was transferred to the Circuit Court of Cook County.[1] The arbitration proceeding remained pending until November 2020, when AAA closed it after neither party agreed to pay an additional fee to keep it open.

¶ 25               D.  State Farm's Answer, Affirmative Defenses, and Counterclaim

¶ 26     Following the change of venue, on January 7, 2023, State Farm filed an answer denying essential allegations in all three counts of the complaint. As relevant here, State Farm admitted that February 12, 2018, was within the effective period of the Policy. It asserted, however, that there was "no coverage under [the] policy" for the incident that Hassan alleged had taken place on that date because Hassan had breached the Policy's concealment-or-fraud provision, voiding the Policy.

¶ 27     State Farm also raised two affirmative defenses. In its first affirmative defense, State Farm alleged that Hassan was not entitled to judgment on his claims because he had breached the concealment-or-fraud provision of the Policy, which provided that there was "no coverage under [the] policy" if Hassan or another insured "had made false statements with the intent to conceal or misrepresent any material fact or circumstances in connection with any claim under [the] policy." State Farm's second affirmative defense went only to Count III. It alleged that State Farm's denial

---

[1]  The motion to transfer and the order granting the motion to transfer are not included in the record on appeal, but we may take judicial notice of court records. *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976).

of coverage was justified or, at minimum, based on the existence of a good-faith dispute over coverage.

¶ 28    In addition to its answer, State Farm filed a counterclaim for a declaratory judgment. The counterclaim alleged that Hassan had violated the concealment-or-fraud provision of the Policy by falsely representing that a hit-and-run accident had occurred on February 12, 2018. It alleged that Hassan's bicep injury had occurred before the supposed accident, that he had conspired with a friend to stage an accident so he could recover from State Farm, and that a forensic analysis of the vehicle showed that it had not been struck from behind by a hit-and-run vehicle. It sought a declaration that there was no coverage under the Policy for the February 12, 2018 incident and that it had no duty to pay Hassan's claims associated with that incident.

¶ 29             E.  The Parties' Motions and the Trial Court's Interlocutory Orders

¶ 30    Between January and March 2023, the parties filed a series of motions, responses, and replies. All of those motions were resolved by written orders entered by the trial court on July 7, 2023. For the sake of clarity, we will describe the motions and the trial court's associated rulings one at a time.

¶ 31             1.  Motion to Compel Arbitration and Cross-Motion to Stay Arbitration

¶ 32    The day before State Farm filed its answer, affirmative defenses, and counterclaim, Hassan filed an amended motion to compel arbitration. Anticipating a dispute over coverage, the motion to compel argued that State Farm had waived any coverage defense under the rules governing the arbitration and that it should be estopped from denying coverage because it had led Hassan to believe that any coverage issues would be resolved in arbitration and that Hassan had relied on that belief to his detriment when he paid the $450 arbitration fee.

¶ 33    The next day, along with its answer and counterclaim, State Farm filed a cross-motion to stay arbitration, which also served as its response to Hassan's motion to compel. In its cross-motion, State Farm asserted that there was no coverage under the Policy because no hit-and-run accident had occurred and because Hassan had breached the Policy's concealment-or-fraud provision. It

argued that it had not waived its coverage defense because arbitration was ultimately not conducted and because it had notified AAA that it objected to continuing to participate in the arbitration.[2] State Farm also argued that it was not estopped from raising its coverage defense because it had expressly reserved its rights in its January 2019 letter and because at the time State Farm "initially agreed to participate in arbitration," it had not yet obtained Yusuf's statement under oath.

¶ 34      In his response, Hassan characterized State Farm's cross-motion to stay arbitration as a request for the court to "decide its Counterclaim prior to arbitration," and argued that State Farm's counterclaim was not proper for the reasons given in his motion to dismiss, which is discussed below.

¶ 35      The trial court denied Hassan's motion to compel, granted State Farm's motion to stay, and ordered a stay of arbitration:

> "[T]he Court must first determine whether Hassan violated the
> Concealment or Fraud provision of the Policy. If he did, then there
> is no coverage and nothing to arbitrate. If he did not, then there may
> be coverage subject to arbitration. Until this determination is made,
> the Arbitration should be stayed."

In the order, the court also rejected Hassan's waiver and estoppel arguments. Reasoning that "no arbitration was conducted" and that State Farm notified AAA of its objection once it had obtained Yusuf's statement under oath, it found that State Farm had not waived arbitrability under the AAA Rules. It also found that the January 2019 reservation-of-rights letter "insulate[d] State Farm from estoppel."

---

[2] The record does not disclose when State Farm filed its objection. Hassan appears to concede that an objection was filed at some point, but he asserts that it was more than 30 days after AAA acknowledged the arbitration demand, which State Farm does not dispute.

¶ 36                              2.  Motion to Strike Affirmative Defenses

¶ 37      Hassan filed a motion to strike State Farm's affirmative defenses. The motion to strike argued that State Farm's noncoverage defense, which stated the reasons why State Farm had denied the underlying claim, were premature because Hassan was only seeking specific performance of the arbitration agreement, not damages for breaching the contract by denying his claim. The motion also argued that State Farm's defenses did not raise any affirmative matters that would defeat his claims but instead denied the allegations of the complaint, which meant that they were not properly raised as affirmative defenses.

¶ 38      The trial court denied the motion to strike. It found that State Farm's noncoverage defense was "not a mere denial of the well-pled facts of the specific performance count" because, if proven, there would be no coverage under the Policy and the arbitration provision could not be invoked. Noting that the existence of a *bona fide* coverage dispute would defeat the allegation of Count III of the complaint that State Farm's conduct was vexatious and unreasonable, it also found that such a dispute was an affirmative defense to a claim for attorney fees under section 155.

¶ 39                              3.  Motion to Dismiss Counterclaim

¶ 40      Hassan also filed a combined motion to dismiss State Farm's counterclaim under sections 2-615 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619 (West 2022); see *id.* § 2-619.1 (authorizing a combined motion to dismiss). The motion argued that, for two reasons, State Farm's counterclaim was subject to dismissal under section 2-615 because it failed to state a claim upon which relief could be granted. First, it argued that the counterclaim improperly sought an advisory opinion as to nonliability for its denial of Hassan's claim. Second, it argued that, because the alleged misrepresentations were not made in the Policy or his policy application, they did not provide a basis for invalidating the Policy. The motion sought involuntary dismissal of the counterclaim under section 2-619(a)(9) because it was based on privileged marital communications. It also sought involuntary dismissal under section 2-619(a)(3) on the basis that there was a pending arbitration, arguing that State Farm's conduct during the aborted arbitration

proceedings had waived its noncoverage defense that it was estopped from asserting its coverage defense due to its conduct leading up to arbitration, its delaying the denial of Hassan's claim until after he filed suit to compel arbitration, and by failing to provide Hassan with a copy of an amendatory endorsement to the Policy that prevented it from relying on Yusef's statements to deny coverage.

¶ 41    The trial court denied Hassan's motion to dismiss on the grounds that State Farm had articulated in its response. It found that, because the counterclaim sought a finding that there was no coverage under the Policy for *any* claims related to the February 12, 2018 incident, not just the uninsured-motorist claim, declaratory relief could be appropriate. It found that Hassan's alleged misrepresentations about the February 12, 2018 incident would be a legally proper basis for denying coverage under the Policy's concealment-or-fraud provision. It found that, due to the absence of a developed record, it would be premature to determine whether the spousal-communications privilege applied and that, in any event, State Farm's counterclaim relied on allegations derived from sources other than Hassan's ex-wife. Finally, it found that the counterclaim was not subject to dismissal under section 2-619(a)(3) because the arbitration and the counterclaim did "not constitute the same action." The court's order denying the motion to dismiss acknowledged, but did not resolve, Hassan's argument that State Farm had waived and was estopped from asserting its coverage defense.

¶ 42    Hassan filed a notice of appeal from all three July 7, 2023 orders.

¶ 43                                II.  ANALYSIS

¶ 44    At the outset, we note that we have jurisdiction under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) over the trial court's interlocutory order granting a stay of arbitration and denying Hassan's motion to compel arbitration. *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 419 (2007). The parties disagree about whether we have jurisdiction to reach the trial court's orders denying Hassan's motions to strike affirmative defenses and dismiss the counterclaim. As discussed below, whether we have jurisdiction over those orders

turns on the extent to which they are bound up with the appeal of the arbitration order, so we begin our analysis with the trial court's resolution of the parties' arbitration motions.

¶ 45                                    A.  Arbitration

¶ 46      The primary issue in this interlocutory appeal is whether the trial court correctly denied Hassan's motion to compel arbitration, granted State Farm's motion to stay arbitration, and ordered arbitration stayed until the court resolves whether Hassan violated the concealment-or-fraud provision of the Policy. The question before us is "whether there was a sufficient showing to sustain the order of the trial court." *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 496 (2002). The trial court did not hold an evidentiary hearing or make any findings of historical fact, so our review is *de novo*. *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 31.

¶ 47                              1.  The Uniform Arbitration Act

¶ 48      Proceedings related to arbitration in Illinois courts are governed by our state's Uniform Arbitration Act (Illinois UAA) (710 ILCS 5/1 *et seq.* (West 2022)). *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 23. The Illinois UAA is based on, and substantially adopts the provisions of, the 1956 version of the uniform act bearing the same name. See Uniform Arbitration Act (1956), 7 U.L.A. 99-796 (West 2009) (UAA (1956)). By its own terms, the Illinois UAA is to be construed "to make uniform the law of those states which enact" the uniform act it is based on. 710 ILCS 5/20 (West 2022); see UAA (1956) § 21.[3] Thus, Illinois courts "show greater than usual deference to the opinions of the courts of other jurisdictions" when interpreting the Illinois UAA. *Lee B. Stern & Co. v. Zimmerman*, 277 Ill. App. 3d 423, 426 (1995).

¶ 49      As relevant here, section 2 of the Illinois UAA provides the mechanism used to enforce arbitration agreements in Illinois courts. Section 2 allows parties to request, by "application," a court order either compelling or staying arbitration. 710 ILCS 5/2 (West 2022). Under section 2(a),

---

[3] The Illinois UAA omits section 15 of the UAA (1956). Consequently, section 15 of the Illinois UAA corresponds to section *16* of the UAA (1956); section 16 of the Illinois UAA corresponds to section *17* of the UAA (1956), and so on.

a party can obtain an order compelling a dispute to arbitration by showing that a valid agreement to arbitrate the controversy exists and that the opposing party is refusing to submit to arbitration. *Id.* § 2(a). Conversely, under section 2(b), a party can seek an order staying a "commenced or threatened" arbitration by showing that there is no agreement to arbitrate the dispute. *Id.* § 2(b). In either situation, the applicant bears the burden of establishing that it is entitled to an order compelling or staying arbitration. See *Sturgill*, 2016 IL App (5th) 140380, ¶ 26.

¶ 50     A court should not compel resolution of a dispute in arbitration unless it is "of the type that the parties have agreed should be submitted to arbitration." *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). At the same time, one of the chief advantages of arbitration is that it is "an effective, expeditious, and cost-efficient method of dispute resolution." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). Lengthy and expensive litigation over issues connected with arbitration would, of course, undermine that benefit. So, an express purpose of the uniform act, and thus the Illinois UAA, is to "provide an efficient procedure" when court oversight of arbitration issues becomes necessary. See UAA (1956) Prefatory Note, 7 U.L.A. 100. To that end, section 2 requires courts to resolve disputes about arbitrability—*i.e.*, whether a given claim must be decided in arbitration—"summarily" and dispose of motions to compel or stay arbitration accordingly. 710 ILCS 5/2(a), (b) (West 2022); accord UAA (1956) § 2(a), (b).

¶ 51     To be clear, the summary proceeding contemplated by section 2 "is not one which merely disposes of the motion in a conclusory fashion." *Sturgill*, 2016 IL App (5th) 140380, ¶ 24. The directive to proceed summarily means only that the "trial court should act expeditiously and without a jury trial to determine whether a valid arbitration agreement exists." Uniform Arbitration Act (2000) § 7, cmt., 7 U.L.A. 32 (discussing section 2 of the UAA (1956)). When arbitrability is put into dispute, the court must "substantively dispose[] of the issues presented." *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 31. Section 2 requires a "considered disposition" in which the trial court "separately addresses each issue raised by the motion" and "support[s] its resolution of each issue with specific factual findings or legal reasons." *Sturgill*,

2016 IL App (5th) 140380, ¶ 24. The trial court should start by identifying the issues raised by the parties and considering the affidavits, pleadings, stipulations, and any other evidence that is before it. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992); accord *J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 130 (Colo. 2007) (interpreting the Uniform Arbitration Act of 2000); *Safeway, Inc. v. Nordic PCL Construction, Inc.*, 130 Hawai'i 517, 531 (Ct. App. 2013) (same). To the extent that there are no factual disputes and the issues can be resolved as a matter of law, no evidentiary hearing is required. *Bass*, 328 Ill. App. 3d at 496. Any remaining dispute of material fact should be resolved expeditiously at an evidentiary hearing. *Jack B. Anglin*, 824 S.W.2d at 269; accord *J.A. Walker Co.*, 159 P.3d at 130; *Safeway*, 130 Hawai'i at 531. Because that evidentiary hearing is part of the summary proceeding required by section 2, it may be "conducted '[w]ithout the usual formalities [and] without a jury.' " (Alterations in original.) *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 351 (Mo. 2006) (quoting Black's Law Dictionary 1476 (8th ed. 1999)).

¶ 52       Here, in its response to Hassan's motion to compel arbitration and its cross-motion to stay arbitration, State Farm argued that there was no coverage for the alleged collision because no hit-and-run accident had occurred and because Hassan has violated the concealment-or-fraud provision of the Policy. In terms of section 2 of the Illinois UAA, State Farm's response "denie[d] the existence of the agreement to arbitrate," and its cross-motion asserted that "there [was] no agreement to arbitrate." 710 ILCS 5/2(a), (b) (West 2022). There is no dispute that, standing alone, the Policy only called for the parties to arbitrate the liability of the hit-and-run driver or owner and the extent of damages—not coverage. Hence, once raised, "the issue of coverage should have been summarily tried [citation] because questions of law or fact concerning coverage cannot under [the] agreement be submitted to arbitration." *Clark v. Country Mutual Insurance Co.*, 131 Ill. App. 3d 633, 637 (1985). The trial court was therefore required to "act expeditiously and without a jury trial to make a substantive determination of whether a valid arbitration agreement exist[ed], and to

resolve any other issues raised by" the parties' cross-motions. *Sturgill*, 2016 IL App (5th) 140380, ¶ 25 (describing the summary proceeding contemplated by section 2).

¶ 53    With this framework in mind, we turn to Hassan's arguments that the trial court erred in denying his motion to compel arbitration by finding that State Farm neither had waived its coverage defense nor was estopped from asserting it.

¶ 54                                    2.  Waiver

¶ 55    We first consider whether the trial court correctly found that State Farm had not waived its right to contest coverage. A waiver is "an express or implied voluntary and intentional relinquishment of a known right." *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 21. Waiver involves "a unilateral act," and it does not require "detrimental reliance" by the other party. *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 219 (2008). The inquiry "focuses exclusively on the conduct of the" party alleged to have waived a right. *Id.* at 218. The burden is on the party asserting waiver to show that the other party "knew of its rights" and "evidenced an intention to waive such rights." *Claxton v. Board of Trustees of City of Alton Firefighters' Pension Fund*, 2023 IL App (5th) 220200, ¶ 29 (citing *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 104 (1991)). The bar for establishing an implied waiver is high. "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder*, 146 Ill. 2d at 105. For instance, a party might impliedly waive a known right by engaging in "conduct [that] is inconsistent with any other intention than to waive it." (Internal quotation mark omitted.) *Id.* (quoting *Kane v. American National Bank & Trust Co.*, 21 Ill. App. 3d 1046, 1052 (1974)). An insurer can waive questions as to coverage under a policy by taking action that "recognizes the continued validity of the policy" (internal quotation marks omitted), such as assuming the insured's legal defense without reserving its right to contest coverage. *Nwidor*, 2018 IL App (1st) 171378, ¶ 22 (quoting *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 306 (1994)).

¶ 56    On appeal, Hassan points to nothing in the record indicating that State Farm expressly waived its noncoverage defense. Instead, he argues that State Farm waived its right to contest coverage through its conduct in the since-abandoned arbitration proceedings by failing to comply with various procedural rules governing the arbitration. See American Arbitration Association, *Illinois Uninsured/Underinsured Motorist Arbitration and Mediation Rules* (eff. Feb. 1, 2016) (AAA Rules).

¶ 57    We agree, as a general matter, that a party can waive the issue of arbitrability by not raising it in a timely fashion during arbitration proceedings. *See First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 50 (2009). But that rule is a consequence of section 12(b)(5) of Illinois UAA, which provides that an arbitration award can be vacated on the ground that there was no arbitration agreement, but only if "the party did not participate in the arbitration hearing without raising the objection." 710 ILCS 5/12(a)(5) (West 2022); see *Borg Inc. v. Morris Middle School Dist. No. 54*, 3 Ill. App. 3d 913, 916 (1972) ("A reading of [section 12(a)(5)] shows clearly that the question of an agreement to arbitrate an issue can not be raised for the first time after an award."). In other words, the right waived by participating in arbitration without raising a timely objection to arbitrability is the right to contest an award on that basis, not the right to assert non-arbitrability generally. Here, State Farm is not relying on its coverage defense as grounds for vacating an arbitration award under section 12(a)(5). Indeed, because the parties never finished arbitration, there is no award that could be vacated. Hence, there is no implied waiver arising from State Farm's alleged failure to contest coverage pursuant to the AAA Rules.

¶ 58    Hassan also contends that State Farm waived the right to have the coverage issue decided by the court. He notes that AAA Rule 4 contemplates submitting coverage disputes to the arbitrator by agreement:

> "Issues as to coverage, *** may be referred to voluntary coverage arbitration with the agreement of all parties before the arbitrator appointed by the AAA. *** In the absence of an agreement

to submit such issues to arbitration, accident claims arbitrators may only decide contested issues of coverage, applicable policy limits, or stacking of policy coverage where ordered to do so by a court or where so authorized by law." AAA Rules, R. 4.

Citing *Coronado v. Fireman's Fund Insurance Co.*, 131 Ill. App. 3d 450 (1985), Hassan suggests that, by participating in the arbitration process, State Farm implicitly agreed to have the arbitrator decide its noncoverage defense, thereby waiving its right to have arbitrability decided by the court.

¶ 59      We think this argument misunderstands *Coronado*. In *Coronado*, after an arbitration award was entered on an uninsured-motorist claim, the insurer returned the award for modification on the ground that it exceeded the limit stated in the insurance policy. *Coronado*, 131 Ill. App. 3d at 452. In his opposition to the insurer's modification request, the claimant apparently argued that a statutory amendment that increased the mandatory minimum coverage limits retroactively increased the limits of the policy at issue. See *id.* at 451-52. The arbitrator agreed with the insurer and modified the award to reflect the reduced limit stated in the policy. *Id.* at 452. After a circuit court confirmed the modified award, the claimant appealed. *Id.* Among other things, he argued that the arbitrator had lacked jurisdiction to decide the legal question of whether the statutory amendment retroactively applied to the policy at issue. *Id.* at 455. The court, however, found that the claimant had waived any objection to the arbitrator deciding the issue by submitting a response to the insurer's request for a modification on the merits rather than moving to stay the modification or objecting to the arbitrator's authority to decide the policy-limit issue. *Id.*

¶ 60      The situation in this case is not the same. In *Coronado*, the claimant waived his objection to the arbitrator deciding a legal question by submitting the issue to the arbitrator. Here, by contrast, the record does not show that either party asked the arbitrator to decide the coverage issue.

¶ 61      It is true, as Hassan points out, that the parties each sent emails to the arbitrator in December 2019 stating their positions concerning State Farm's efforts to obtain a sworn statement from Yusuf and on the applicability of the spousal-communications privilege to whatever she might testify to.

While this certainly suggests that both parties were contemplating that Yusuf might provide testimony in the arbitration proceedings, that testimony was not, as Hassan contends, relevant solely to the issue of coverage. [4] Among other things, Yusuf alleged that Hassan had sustained the tear to his left distal bicep tendon while exercising before the alleged hit-and-run took place, and she had provided State Farm with emails that seemingly corroborated that claim. That evidence tended to show that the injury pre-existed the claimed hit-and-run incident, from which it would follow that the owner or driver of the hit-and-run vehicle would not be liable to Hassan for that injury because it had not been sustained during the hit-and-run incident. And under the Policy, the parties were required to resolve disputes over the hit-and-run driver or vehicle owner's liability in arbitration. Because Yusuf's potential testimony was relevant to a question subject to arbitration under the Policy, State Farm's willingness to have the arbitrator consider issues related to securing and presenting that testimony was fully consistent with an intent to arbitrate only those issues subject to arbitration under the Policy. In short, it did not necessarily reflect that State Farm intended to have the arbitrator decide the coverage dispute, so it does not rise to the level of an unequivocal implied waiver of State Farm's coverage defense.

¶ 62        As the party asserting waiver, Hassan had the burden of showing that State Farm waived its right to raise its coverage defense or to have the coverage issue decided by the court. Based on the record before us, we agree with the trial court that he failed to carry that burden, and we hold that State Farm did not waive its right to dispute coverage.

¶ 63                                                3.  Estoppel

¶ 64        Hassan next argues that State Farm should be estopped from disputing coverage. "[E]stoppel refers to an abatement, by operation of law, of the insurer's rights where it would be inequitable to permit their assertion." *Nwidor*, 2018 IL App (1st) 171378, ¶ 12. "The general rule is that where a

---

[4]  We note that, in his complaint, Hassan expressly took the *contrary* position, arguing that Yusuf's testimony "is a subject for arbitration" because it went to whether "the hit-and-run driver is liable to" Hassan.

person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). To estop State Farm from contesting arbitrability, Hassan must put forward "clear, concise, and unequivocal" evidence showing that: (1) he was misled in some way by State Farm's actions or statements, (2) he relied on that conduct or misrepresentation, (3) that reliance was reasonable, and (4) that reliance prejudiced him. *Farmers Insurance Exchange v. Cheekati*, 2022 IL App (4th) 210023, ¶ 28.

¶ 65        Here, Hassan argues that State Farm should be estopped from disputing coverage because it invited him to arbitrate the dispute in a July 30, 2019 email that State Farm's lawyer sent to Hassan's lawyer, which stated as follows:

> "Steve:
>
> Let's move this case forward toward arbitration as I wait on authority. Are you free to discuss evidentiary stipulations and arbitration scheduling this afternoon? If so, let me know what time.
> I'll call you.
>
> Regards,
>
> -EWM"

Hassan argues that, in the context of State Farm's previous communications—including its reservation-of-rights letter, which identified two coverage defenses, and its February 24, 2019 letter indicating that, once it completed its investigation and "assuming no coverage defenses," it would be "willing to proceed to binding arbitration" on any remaining dispute over damages—the July 30 email suggested that State Farm had completed its investigation and concluded that it did not have any coverage defenses.

¶ 66        Based strictly on the materials in the record before us, Hassan's reading of the July 30 email is a plausible one. It is apparent, though, that we are lacking the full context. For instance, the

February 24 letter suggests that it is responding to an email sent three days earlier by Hassan's attorney that is not in the record. The July 30 email states that counsel for State Farm was "wait[ing] on authority," but it does not specify what kind of authority, implying previous communications that are not found in the record. Indeed, other than the emails exchanged about Yusuf's allegation on the night of Hassan's examination under oath, the record is bereft of information about any communication between the parties between February 24 and July 30, 2019, that would shed light on whether it was reasonable to rely on the July 30 email as indicating that State Farm had completed its investigation and was no longer contesting coverage.

¶ 67    Still, because Hassan's reading is a plausible one, we do not think that his estoppel argument was properly rejected purely as a matter of law. When "reasonable people might draw different conclusions from the evidence," estoppel is a question for a trier of fact. *Sykes*, 384 Ill. App. 3d 207, 220 (2008). Because estoppel could not be resolved as a matter of law, the trial court should have held an evidentiary hearing and then determined, as a question of fact, whether Hassan had proven the elements of his estoppel claim. We therefore reverse the trial court's arbitration order and remand for it to, in accordance with section 2 of the Illinois UAA, hold any proceedings necessary to decide whether State Farm's conduct estops it from contesting coverage under the particular facts of this case, as the court may determine.

¶ 68                                   4. Coverage

¶ 69    Finally, we note that, in resolving the arbitration motions, the trial court expressly reserved ruling on the ultimate question of coverage raised by State Farm. Although neither party raises the point, "denying [a] motion to compel arbitration without ruling on the arbitrability of the dispute" is error. *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 285 Ill. App. 3d 796, 801 (1996). On remand, the trial court should not only decide the issue of estoppel but also any other remaining questions of law or fact—such as State Farm's noncoverage assertions—needed to substantively resolve whether the parties' dispute is within the scope of the arbitration agreement. See 710 ILCS 5/2 (West 2022); *Sturgill*, 2016 IL App (5th) 140380, ¶ 25.

¶ 70                    B.  State Farm's Affirmative Defenses and Counterclaim

¶ 71        As noted above, our jurisdiction to review the trial court's arbitration order under Rule 307(a)(1) is clear. The orders denying Hassan's motion to strike affirmative defenses and his motion to dismiss the counterclaim are a different matter. Those interlocutory orders are not independently appealable, either by permission under Rule 306(a) or as of right under Rule 307(a). That is not necessarily dispositive, though. "Rule 307 allows this court to review any prior error that bears directly upon the question of whether an order on appeal was proper." *Glazer's Distributors*, 376 Ill. App. 3d at 420. In other words, our review of the trial court's order staying arbitration is not limited to the four corners of that particular order but extends to any antecedent actions that have a direct bearing on the arbitration decision. *Cf.* Ill. S. Ct. R. 366(a)(5) (granting reviewing court authority to "enter and judgment and make any order that ought to have been given or made *** that the case may require"). Among other things, that means we have jurisdiction to consider any previous order that is "intertwined" with the resolution of the arbitration motions such that the outcome of the previous order was necessarily dispositive of the arbitration order. See *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 448-49 (2004) (finding jurisdiction to review trial court's order denying defendant's motion to strike class allegations because that decision necessarily required it to also deny defendant's motion to compel arbitration).

¶ 72        In his briefs, Hassan asserts that we have jurisdiction to review the trial court's orders denying his motions to strike State Farm's affirmative defenses and dismiss its counterclaim because the "denial of [his] motions attacking [State Farm's] pleadings made denial of [his] motion compelling arbitration a foregone conclusion." We disagree. The Illinois UAA permitted State Farm to raise its noncoverage defense by way of "den[ying] the existence of an agreement to arbitrate" in its response to the motion to stay arbitration. 710 ILCS 5/2(a) (West 2022). It also permitted State Farm to raise that defense in its cross-motion to stay arbitration, which required it to show that there was no agreement to arbitrate. *Id.* § 2(b). Because State Farm did not need to plead noncoverage as an affirmative defense or in a counterclaim to be able to rely on it as a basis for

defeating Hassan's motion to compel arbitration, it would not have made any difference if the trial court had granted Hassan's motions directed against State Farm's pleadings.

¶ 73    Hassan also suggests that the trial court's rulings on his motion to strike and motion to dismiss were intertwined with its ruling on the arbitration motion because they involved overlapping issues of waiver and estoppel. Again, we disagree.

¶ 74    Our review of the record discloses that Hassan did not move to strike State Farm's affirmative defenses on the basis of either waiver or estoppel. Instead, he argued that its noncoverage defenses constituted a denial of the allegations in his complaint, which meant that they were not properly raised as affirmative defenses. The trial court's order denying the motion to strike did not address either waiver or estoppel. Hence, that order is not intertwined with the arbitration order, which means we lack jurisdiction to review it on an interlocutory basis.

¶ 75    Hassan's motion to dismiss State Farm's counterclaim asserted both waiver and estoppel, but it did so within the context of arguing that the counterclaim should be dismissed because the arbitration proceedings were a pending action involving the same claim. See 735 ILCS 5/2-619(a)(3) (West 2022) (permitting involuntary dismissal of a claim when "there is another action pending between the same parties for the same cause"). Consequently, although the trial court's order denying the motion to dismiss discussed the parties' arguments concerning waiver (but not estoppel), it denied the motion on the basis that "the AAA arbitration and the Counterclaim do not constitute the same action." That finding had nothing to do with waiver or estoppel, which means that the trial court's resolution of the motion to dismiss was not intertwined with its arbitration order. Again, that means we do not have jurisdiction to review it in this interlocutory appeal.

¶ 76    In sum, the trial court's denial of Hassan's motion to strike State Farm's affirmative defenses and his motion to dismiss its counterclaim had no bearing on its resolution of the arbitration motions. We therefore lack jurisdiction to review those orders on an interlocutory basis, so we

must dismiss Hassan's appeal from those orders. See *In re Estate of O'Gara*, 2022 IL App (1st) 210709, ¶ 35 (dismissing appeal to extent court lacked jurisdiction).

¶ 77                          C.  Hassan's Request for Sanctions

¶ 78        In his reply brief, Hassan asks us to sanction State Farm based on various allegations of misconduct in the trial court and on appeal. But his complaints about conduct in the trial court are not properly before us, as the record contains no indication that Hassan sought sanctions in the trial court. In any event, he did not ask for sanctions in his opening brief, and "[i]ssues raised for the first time in a reply brief do not merit consideration." *Illinois Union Insurance Co. v. Medline Industries, Inc.*, 2022 IL App (2d) 210175, ¶ 47; see also Ill. S. Ct. R. 341(j) (eff. Oct. 1, 2020) ("The reply brief, if any, shall be confined strictly to reply to arguments presented in the brief of the appellee."). As for the alleged misconduct in this court, a request for sanctions is properly brought through a motion, not in a reply brief to which the opposing party has no right of response. See Ill S. Ct. R 375(b) (eff. Feb. 1, 1994). On our own motion, the portion of Hassan's reply brief requesting sanctions against State Farm is stricken for noncompliance with the rules. See *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37 ("Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal, should the circumstances warrant.").

¶ 79                                III.  CONCLUSION

¶ 80        We hold that State Farm did not waive its right to contest coverage, but we find that the trial court erred by rejecting Hassan's estoppel claim as a matter of law. We therefore reverse the order denying Hassan's motion to compel arbitration and granting State Farm's cross-motion to stay arbitration, and we remand to the trial court. On remand, consistent with section 2 of the Illinois UAA (710 ILCS 5/2 (West 2022)), the trial court should make any factual determinations necessary to resolve Hassan's estoppel claim, and it should hold any other proceedings that may be needed for it to resolve the ultimate question of coverage. Because we lack jurisdiction to consider the

trial court's orders denying Hassan's motion to strike affirmative defenses and motion to dismiss counterclaim, we dismiss his appeal from those orders.

¶ 81        Reversed and remanded in part; dismissed in part.