**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230304-U

Order filed November 6, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE VILLAGE OF PLAINFIELD, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-23-0304 |
| | ) | Circuit No. 18-CH-1761 |
| | ) | |
| IONIA REAL PROPERTIES, LLC; | ) | |
| JOHN ARGOUDELIS, Individually; | ) | |
| CARRINGTON TITLE PARTNERS, LLC; | ) | |
| DARREN BENNEFIELD, Individually; | ) | |
| and PHOENIX FIRE SYSTEMS, INC., | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | John C. Anderson and |
| (Ionia Real Properties, LLC and John | ) | Roger D. Rickmon, |
| Argoudelis, Defendants-Appellants). | ) | Judges, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   In this breach of contract action, the court did not err when it (1) entered summary judgment in plaintiff's favor, (2) denied defendants' motion to disqualify, (3) granted plaintiff's motion for protective order and to quash subpoenas, and (4) entered a $45,000 judgment against defendants.

¶ 2    Ionia Real Properties, LLC (Ionia) and its sole member, John Argoudelis (collectively defendants), appeal the circuit court's rulings in favor of plaintiff, the Village of Plainfield (Village), on the parties' cross motions for summary judgment, defendants' motion to disqualify the Village's attorney, the Village's discovery motion, and money damages. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In August 2017, Ionia purchased a vacant building within the common boundaries of the Village and the Plainfield Fire Protection District (District).[1] In September 2017, the Village issued Ionia a commercial change-of-occupancy permit for the property. The permit which did not allow occupancy of the property, was required for the Village to begin conducting inspections for compliance with Village ordinances and codes.

¶ 5    On October 25, 2017, the District informed Ionia by letter of numerous fire and safety issues that needed to be addressed, including the installation of a fire alarm system. Per the letter, Ionia was required to have all fire and safety items completed by January 26, 2018.

¶ 6    On November 13, 2017, the Village inspected the property and issued a temporary occupancy permit to Ionia. The Village informed Ionia of several items that violated Village code and required "Fire Department Approval" before it would issue an occupancy permit. On January 26, 2018, the Village invalidated the temporary occupancy permit, citing Ionia's failure to comply with the District's letter. Between February and July 2018, the Village reissued Ionia's temporary occupancy permit four times only to invalidate it each time due to Ionia's failure to install a fire alarm system.

¶ 7    On May 15, 2018, Argoudelis presented a bid proposal for the fire alarm system during a meeting with the District's marshal and chief. On May 21, 2018, the District sent Argoudelis a

_____

[1]The District is its own governmental entity and is not a party to this action.

2

letter indicating the District had reviewed the proposal. Per the letter, Argoudelis could eliminate three fire alarm pull stations shown in the proposal, since his office was "a small office space." The letter also addressed the fire alarm control panel and annunciator panel. It further stated,

"The remaining items listed for your fire alarm system are required by the fire codes and standards and cannot be eliminated. The fire alarm system is to be installed and monitored by June 14, 2018. Please have your fire alarm contractor submit plans for review and approval prior to beginning their installation. The fire alarm system installation is required to comply with Plainfield Fire Protection District and Village of Plainfield Ordinances, the 2015 International Fire Code, [National Fire Protection Association (NFPA)] 72 and NFPA 70."

The letter did not include a list of equipment. On June 14, 2018, Ionia had not yet installed the fire alarm system.

¶ 8        On July 13, 2018, the temporary occupancy permit for the property expired, but Ionia continued to occupy the property. The Village issued violation notices and fines.

¶ 9        On August 27, 2018, the Village and Ionia executed a memorandum of agreement (Agreement). The Agreement provided as follows:

"This Agreement shall be effective as of August 27, 2018 (the 'Effective Date').

* * *

Whereas, the District has determined that the [fire alarm] System is required for the Property and has agreed to accept the System as identified in the District's May 21, 2018 letter to [Ionia] ***[.]

* * *

3

2. Within sixty (60) days of the Effective Date of this Agreement, [Ionia] will comply with the District's May 21, 2018 letter and install the System, and all applicable requirements and modifications as approved by the District. (See, Letter attached as Exhibit A).

    ***

4. The parties to this Agreement agree that pursuant to the Village's Code of Ordinances, a fine of Five Hundred Dollars ($500.00) per calendar day shall accrue from the Effective Date of this Agreement until installation of the System by [Ionia] and acceptance of the System by the District, which shall not be unreasonably delayed or withheld.

5. [Ionia] will be allowed to occupy the Property during the installation period, however under no circumstances shall the installation period exceed sixty (60) calendar days from the Effective Date of this Agreement. All fines associated with the Violation Notice ($500.00/day) shall be waived upon installation of the System, and acceptance of the System by the District, provided installation and acceptance occurs within sixty (60) calendar days of the Effective Date of this Agreement.

6. The Village will issue an Occupancy Permit to [Ionia] upon acceptance of the System by the District, and upon inspection of the Property by an authorized representative of the Village.

7. Failure of the Owner to comply with the terms of the Agreement will result in the imposition of the above-referenced fines ($500.00/day), forfeiture of the Agreement, and [Ionia] shall immediately cease all business activities at, and

4

occupancy of, the Property. [Ionia] agrees to immediately remit to the Village, payment of all fine amounts owed under the terms of this Agreement ***.

8. Notwithstanding the foregoing, [Ionia] shall not be deemed to be in violation of this Agreement if [it] is unable to complete installation of the system within sixty (60) days of the Effective Date of the Agreement due to an excusable delay. For purposes of this Agreement, 'excusable delay' shall mean only those circumstances beyond [Ionia's] reasonable control."

¶ 10 The fire alarm system was not installed by October 26, 2018 (that is, within 60 days of the Agreement's effective date).

¶ 11 On November 1, 2018, the Village filed a verified complaint and an emergency motion for injunctive and other relief, seeking (1) to prohibit occupancy of the property until installation and final approval of the fire alarm system and issuance of an occupancy permit, and (2) a money judgment for all fine amounts.

¶ 12 Phoenix Fire Systems (Phoenix) finished installing the system on November 9, 2018, and the Village approved it on November 27, 2018.

¶ 13 On June 30, 2020, the Village amended its complaint, asserting claims for breach of contract, breach of fiduciary duty, and other relief. Ultimately, the amended complaint proceeded on one count of breach of contract against Ionia and one count of unjust enrichment against Argoudelis individually. Defendants asserted three affirmative defenses to the Village's amended complaint: (1) estoppel, (2) defendants' substantial compliance with the Agreement, and (3) unclean hands.

¶ 14 A. Defendants' Motion to Disqualify Joan Meyers as Counsel for the Village

5

¶ 15    In December 2021, defendants moved to disqualify Joan Meyers as counsel for the Village. Defendants alleged Meyers drafted the Agreement and "[t]he testimony she may provide relates to the agreement she negotiated and drafted."

¶ 16    The Village responded the Agreement was proposed and drafted by defendants' counsel, not by Meyers. Moreover, the Village argued there was no issue before the court related to negotiating or drafting the Agreement. Meyers averred, "I was not directly involved in, nor do I have personal knowledge of, any aspect of the factual allegations identified in the pleadings filed in this matter."

¶ 17    In reply, defendants argued the Agreement would be at issue during trial and Meyers was the only Village witness who could provide relevant information regarding the Village's perspective as to why the terms of the Agreement were drafted the way they were.

¶ 18    After a hearing, the court denied the motion.

¶ 19            B. The Village's Motion for Protective Order and to Quash Subpoenas

¶ 20    In December 2021, defendants served notices of depositions and subpoenas on current and former Village trustees, the former Village president, the former Village administrator, and the Village attorney. In January 2022, the Village moved for a protective order barring the depositions of the Village's current trustees and legal counsel, and to quash subpoenas for the former trustees, administrator, and Village president. Each individual that defendants wished to depose averred they had no personal knowledge of the factual allegations identified in the pleadings.

¶ 21    Defendants responded that the entire lawsuit was politically motivated, guided the behavior of the Village staff, and was instrumental in the negotiation of the Agreement's terms.

¶ 22    The Village replied defendants provided no explanation for how the Village's motivation in bringing this lawsuit would somehow be relevant to whether defendants complied with the

6

Agreement to install the fire alarm system by the October 26, 2018, deadline. Furthermore, the exact terms of the Agreement were written in plain language and defendants have not challenged the enforceability of the Agreement.

¶ 23  After a hearing, the court granted the motion, reasoning defendants had not identified a reasonable need to depose the individuals.

¶ 24  C. Depositions

¶ 25  During discovery, Argoudelis, James Callahan of Phoenix, and Mary Ludemann of the District were deposed. Their testimony is summarized below.

¶ 26  *1. Argoudelis's Deposition*

¶ 27  Argoudelis's attorney at the time negotiated, drafted, and executed the Agreement with the Village. Argoudelis knew the Agreement required the fire alarm system to comply with the District's May 21, 2018, letter. He testified, "The letter's incorporated in the agreement. I wasn't focusing on the details of the letter other than—the main thing I was focused on was the equipment and the cost of the equipment being requested, not the process and how you get it installed and approved." Ludemann never said the District needed a written plan until late October, and to his knowledge, the first time his contractor knew that plans needed to be submitted was in late October.

¶ 28  On October 2, 2018, Callahan sent Argoudelis a quote for the fire alarm installation. Argoudelis did not sign the quote immediately because Callahan was going to discuss it with Ludemann to ensure it was acceptable and they could move forward. Argoudelis believed he signed the quote on October 15. He did not recall Callahan telling him the quote needed to be signed before Callahan would prepare any plans. Argoudelis explained his email archives are missing all sent emails from late 2017 to early 2019, so the email he sent to Phoenix with the signed quote on October 15 could not be produced in discovery. On October 22, Callahan emailed

7

Argoudelis informing Argoudelis he still had not received the signed quote and Phoenix could not start work without it. Argoudelis wrote back, "I sent this to you on 10/16. Please confirm receipt. You did tell me last week that you would produce the drawings and submit them to [Ludemann]. Where are you at with this? I need them submitted within a day or so since they are taking such a hard line." Argoudelis knew as of October 22 that Callahan was not going to start preparing plans prior to having a signed quote, but he was not sure if Callahan articulated this to him before.

¶ 29    Argoudelis confirmed the system was not installed and accepted within 60 days as required by the Agreement, but he believed there was an excusable delay. Ludemann insisted on requiring additional equipment, and she did not give Phoenix approval to start installation until October 24 or 25. This back and forth between Ludemann and Phoenix was not within Argoudelis's control.

¶ 30    *2. Callahan's Deposition*

¶ 31    Callahan was employed by Phoenix as a sales representative and project manager. His role was to provide fire alarm equipment for the building to meet Plainfield code and to coordinate installation. He contracted out actual installation of the equipment to a different company.

¶ 32    His first conversation with Argoudelis was on August 21 or 22, 2018. Callahan sent Argoudelis an installation proposal and quote on September 17, 2018, but Argoudelis did not sign it because it contained more devices than he wanted installed. Around October 1, Argoudelis sent Callahan a list of devices and asked him to revise the proposal to match this list. Callahan sent Argoudelis a revised quote on October 2, but Argoudelis did not immediately sign it. The two communicated on October 10 and 11, but Argoudelis did not tell Callahan why he did not sign the revised quote. Per company policy, Phoenix needed a signed quote to proceed with any work.

¶ 33    Callahan did not email the October 2 proposal to Ludemann because he had to submit drawings. The District did not review proposals and quantities; it wanted to use building layout

8

and see the design. In his experience, a quote or proposal for the installation of a fire alarm system was not sufficient to send to a fire protection district. To get a system approved, he had to send a fully engineered set of drawings, battery calculations, design, and descriptions of the rooms so the District knew what type of equipment was necessary. Ludemann would not have known whether the system was correctly laid out for this particular building just by looking at building material.

¶ 34 As of October 12, Phoenix had not prepared a drawing, but it was in the preliminary stages. Callahan testified,

> "We knew at some point he was going to sign the proposal. So we kind of acted on—because we know he had to have a system installed rather quickly. So we started doing some preliminary work. I was asking him for some kind of drawing, a building layout of his building so we can incorporate it into our drawings."

¶ 35 Callahan did not recall receiving the signed quote on October 16. He received the signed quote for the first time on October 22. Phoenix immediately generated a set of drawings to submit to the District because it knew Argoudelis was under time constraints. Callahan sent the completed drawing plans to Argoudelis on October 23 and submitted them to the District on October 24. Ludemann sent Callahan a fire alarm plan review letter on October 25. This was not full approval because the District still required two devices to be added, but it allowed Phoenix to begin installation.

¶ 36 Phoenix completed the fire alarm system installation on November 9. The District tested the system on November 13. The system passed, with the stipulation to add two more devices. The District retested and approved the system on November 27.

¶ 37 It took approximately two and a half weeks to install the system. Argoudelis's failure to sign the quote delayed the installation.

9

¶ 38                              *3. Ludemann's Deposition*

¶ 39          Ludemann worked for the District as an inspector and marshal. On May 15, 2018, Argoudelis met with her and the District's chief. They discussed Argoudelis's bid proposal. This was not an actual plan submission. Ludemann testified, "there was no drawing submitted, so there was no way for me to know with that bid proposal what was going where. I needed a plan review in order to determine if the system was sufficient."

¶ 40          On May 21, the chief sent Argoudelis a letter stating plans needed to be submitted for review and approval, and the system needed to comply with all codes, standards, and ordinances. The District was trying to work with Argoudelis by omitting some of the items as specified in the letter.

¶ 41          Ludemann had no input in drafting the Agreement.

¶ 42          Phoenix submitted the plan drawings on October 23. Ludemann reviewed them and sent Phoenix a plan review letter the next day. Normally, this is a 14-day turnaround, but she turned this around right away to avoid any further delays. The plan review letter did not reject Phoenix's plans but required two additional devices to be added to what Phoenix submitted. According to Ludemann, "They weren't shown on the plans, it's not above and beyond, it's the basic minimum requirements. Why they weren't shown, I can't answer." These were the only plans she received, and the only plan review she conducted was based on these plans. During the deposition, defense counsel showed Ludemann the two quotes from Phoenix. She testified,

>          "The point is what you are showing me is nothing to do with anything I would review, it's between the client and their contractor. The plans that were sent to me were reviewed, there was a requirement for a strobe in the bathroom and a strobe

in the basement with a horn per code that wasn't on the plans for whatever reason and that was requested to be added per code and that's that."

¶ 43 The District tested the system on November 13 and found that two devices, required by code, were still missing. The system was retested on November 27, after the required devices were installed.

¶ 44 D. The Parties' Cross Motions for Summary Judgment

¶ 45 In April 2022, the Village moved for summary judgment, arguing as follows. It was undisputed the Agreement was enforceable and required Ionia to install a code-compliant fire alarm system within 60 days of the Agreement's effective date, that is, by October 26, 2018. Further, Ionia agreed to pay the Village a fine of $500 per day, which would be waived only if installation and approval of the fire alarm system occurred by October 26, 2018. Ionia failed to install the system by October 26, 2018, and, moreover, there was nothing to excuse Ionia's noncompliance. Lastly, the evidence revealed Argoudelis was solely responsible for delaying installation by failing to timely execute a quote with Phoenix.

¶ 46 Defendants also moved for summary judgment. They argued as follows. The Agreement required the Village to waive all fines upon acceptance of the fire alarm system because the 60-day deadline was a nonmaterial clause and did not affect the parties' bargained-for objective. The Agreement reflected a compromise where the Village and Ionia were not tied to one specific completion date. The Agreement's purpose was to ensure the installation of a fire alarm system at the property; because the system has been installed, any fines constituted an unenforceable penalty. Moreover, the Village's breach of contract claim failed because the Village suffered no damages.

¶ 47 E. The Court's Summary Judgment Rulings

11

¶ 48 On June 24, 2022, the court granted the Village's motion for summary judgment and denied defendant's motion. Thus, only the issue of damages remained pending.

¶ 49 F. Damages

¶ 50 On August 23, 2022, defendants filed a brief regarding damages. They argued the purpose of paragraph 7 of the Agreement was to secure performance or punish nonperformance. According to paragraph 7:

> "Failure of [Ionia] to comply with the terms of the Agreement will result in the imposition of the above-referenced fines ($500.00/day), forfeiture of the Agreement, and [Ionia] shall immediately cease all business activities at, and occupancy of, the Property. [Ionia] agrees to immediately remit to the Village, payment of all fine amounts owed under the terms of this Agreement ***."

Defendants contended the fine provision resulted in a windfall recovery for the Village and was not a credible estimate of damages.

¶ 51 The Village responded the fines would have been owed by Ionia regardless of whether the Agreement was executed, because the fines were imposed pursuant to Village code. The Village's agreement to waive Ionia's fines in exchange for Ionia installing the fire alarm system within 60 days and then the Village's refusal to waive the fines when Ionia breached the Agreement did not somehow transform the fines into an unenforceable penalty.

¶ 52 On November 1, 2022, the court found paragraph 7 of the Agreement was an unenforceable penalty clause.

¶ 53 G. The Village's Motion to Reconsider

¶ 54 On November 18, 2022, the Village moved to reconsider the November 1 order. The Village asserted by finding the Agreement contained an unenforceable penalty clause, the court

12

failed to consider (1) the undisputed facts regarding the drafting of the Agreement, (2) the bargained-for consideration that was the basis of the Agreement, (3) the Village's code mandating the amount of fines imposed for violations, and (4) the fines that Ionia already accrued by the time the Agreement was executed. The Village also argued by granting its motion for summary judgment but then finding paragraph 7 of the Agreement to be unenforceable, it was impossible to reconcile the two rulings: that judgment should be entered in favor of the Village, but the Village was not entitled to recover the fines set forth in the Agreement.

¶ 55    In response, defendants asserted the Village had not brought any newly discovered evidence, no changes in existing law, and had not pointed out any errors in the court's application of existing law.

¶ 56    On June 12, 2023, the court granted the Village's motion to reconsider with respect to the breach of contract claim and entered judgment against Ionia in the amount of $45,000. The court denied the motion to reconsider with respect to the unjust enrichment claim against Argoudelis. Defendants appealed.

¶ 57                               II. ANALYSIS

¶ 58    On appeal, defendants argue the circuit court erred when it (1) granted the Village's motion for summary judgment, (2) denied defendants' motion for summary judgment, (3) denied defendants' motion to disqualify, (4) granted the Village's motion for protective order and to quash subpoenas, and (5) entered a judgment for $45,000, against Ionia.

¶ 59    As an initial matter, the Village argues defendants' brief should be stricken and the appeal dismissed because the brief does not comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) in that their statement of facts does not provide this court with a complete picture of the proceedings. The Village previously filed a motion to strike the brief on this same basis, and we

13

denied the motion. While that ruling is not binding, we conclude defendants' violation does not hinder our review to the point that dismissing the appeal would be appropriate. See *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37.

¶ 60                     A. The Parties' Cross Motions for Summary Judgment

¶ 61        Defendants argue the circuit court erred in granting the Village's motion for summary judgment, because there was a question of material fact on the issue of excusable delay. Specifically, they maintain the record shows the delay was at least in part caused by the District. First, defendants point out the District required Ionia to add equipment above and beyond the original agreed-upon system, which resulted in the installation delay. Second, defendants note they did not control Phoenix or the physical installation of the fire alarm system, and defendants communicated to Phoenix there was a completion deadline. In addition, defendants point to their verified denials of 27 paragraphs of the Village's complaint and assert the circuit court failed to take defendants' affirmative defenses into account.

¶ 62        Defendants also contend the circuit court erred in denying their motion for summary judgment. Defendants argue the 60-day installation deadline was a nonmaterial clause, the alleged breach did not deprive the Village of the benefit of its bargain, and it did not result in any damages to the Village. According to defendants, the Agreement's bargained-for objective was to have the fire alarm system installed at the property and for the property to receive an occupancy permit within a reasonable amount of time. The fines were never a bargained-for objective but rather a potential consequence if the system was not installed. Further, they argue the fines were an unenforceable penalty to coerce performance rather than a valid liquidated damages provision. Therefore, defendants allege, the fines result in a windfall to the Village.

14

¶ 63        The Village argues defendants' claims are unsupported by the evidentiary record, and the circuit court properly granted its motion for summary judgment. The Village asserts defendants have not cited any evidence to suggest the District required Ionia to install a fire alarm system that was above and beyond what was required under law and what was agreed to by the parties. Moreover, the Village asserts Argoudelis alone delayed the fire alarm installation through his failure to agree to and execute a quote with Phoenix in a timely manner. Argoudelis did not execute the quote that would allow Phoenix to initiate the work until October 22, 2018, just 4 days before the Agreement's 60-day deadline. According to the Village, defendants ignore Callahan's deposition testimony that Argoudelis's failure to sign the quote caused the delay.

¶ 64        The Village argues the circuit court also properly denied defendants' motion for summary judgment. According to the Village, defendants' argument that the Agreement's 60-day deadline was immaterial is disingenuous. The Village maintains the timing of the installation was the precise consideration that was bargained for and the essential objective of the Agreement. Moreover, the Village argues, even in the absence of the Agreement, Ionia would have been required to install the fire alarm system. The only consideration the Village received was that the installation must occur within 60 days. The specific date the installation needed to be completed for the fines to be waived was negotiated by Ionia's attorney and agreed to by Ionia. Further, the Village argues, the inclusion of an excusable delay provision would have been unnecessary if the timing of the installation was an immaterial term. The Village maintains that despite defendants' representations, it is not imposing a $500 per day fine on Ionia as a penalty for installing the fire alarm system 14 days late. To the contrary, this fine was imposed pursuant to Village code, the Village began issuing violation notices in August 2018, and Ionia would have owed the fines regardless of whether the Agreement was executed. Defendants presented no facts or legal

15

authority to support its argument that by failing to waive Ionia's fines, the Village is imposing an unenforceable penalty. Finally, the Village contends Ionia had in fact delayed installing a fire alarm system for over a year.

¶ 65        Summary judgment will be granted if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." *Id.* "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Id.* "In reviewing a trial court's grant of summary judgment, we do not assess the credibility of the testimony presented but, rather, determine only whether the evidence presented was sufficient to create an issue of material fact." *Lau v. Abbott Laboratories*, 2019 IL App (2d) 180456, ¶ 37. We review the circuit court's decision to grant a motion for summary judgment *de novo*. *Shaw v. U.S. Financial Life Insurance Co.*, 2022 IL App (1st) 211533, ¶ 26.

¶ 66        After careful review of the record, we find there is no genuine issue as to any material fact and the Village was entitled to judgment as a matter of law. Defendants' claims are not supported or are outright contradicted by the record. Defendants' argument that the District required additional equipment above and beyond the Agreement is misguided. The Agreement itself states Ionia "will comply with the District's May 21, 2018 letter and install the System, *and all applicable requirements and modifications as approved by the District.*" (Emphasis added). The District in

16

its May 21 letter did not agree to accept the system as is; a formal review and approval process was still required. Additionally, defendants never presented any evidence that shows the equipment exceeded that which was required by the Village's code.

¶ 67    Admittedly, defendants did not have control over Phoenix or the physical installation. But it is undisputed Argoudelis did not return a signed quote to Phoenix until four days before the installation deadline. Even if Argoudelis returned the signed quote on October 15, as he testified, that left only 12 calendar days for the fire alarm system to be reviewed, approved, installed, tested, and pass final inspection. The District informed Argoudelis in the October 25, 2017, letter that installation of a fire alarm system takes more than 30 days to complete. Callahan testified Argoudelis caused the delay, and defendants submit nothing to refute that. Because signing the quote with Phoenix was entirely within Argoudelis's control, it was Argoudelis alone that caused the delay. Thus, there was no "excusable delay" as defined in the Agreement.

¶ 68    Defendants also emphasize their verified denials of 27 paragraphs of the Village's amended complaint. However, "[i]f the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opponent cannot rest on his pleadings to create a genuine issue of material fact." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470 (2001). This is true even if the pleading is verified. *Fryison v. McGee*, 106 Ill. App. 3d 537, 539 (1982). Defendants' denials, with nothing more, are not enough to create a genuine issue of material fact. Moreover, defendants' defenses provide nothing that create a genuine issue of material fact because the defenses rely on the same arguments and facts that are undisputed by the record.

¶ 69    Defendants' reasoning in their argument that the court erred in denying its motion for summary judgment wholly ignores the Agreement's plain language. "If the words in the contract

are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). "A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Id.* at 442. The Agreement is clear that defendants had 60 days to install the system, a $500 per day fine would be imposed if Ionia did not comply with the Agreement, and that fine would be waived only if the system was installed within 60 days. Only an excusable delay outside Ionia's control would excuse Ionia's untimely performance. We fail to see how the 60-day deadline was not a material provision in the Agreement. If the timeline was immaterial, the fine and excusable-delay provisions would be rendered meaningless, thus rendering the entire Agreement meaningless. We decline to read the 60-day deadline provision as an immaterial term.

¶ 70　　　　The fine provision in the Agreement was a valid liquidated damages clause, not an unenforceable penalty. "It is a general rule of contract law that, for reasons of public policy, a liquidated damages clause which operates as a penalty for nonperformance or as a threat to secure performance will not be enforced." *Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 423 (2004). Three elements must be met to validate a liquidated damages clause:

> "(1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." *Id.*

The parties agreed to the daily fine. The amount was reasonable, because pursuant to the local ordinance, "[t]here shall be an automatic five hundred dollars ($500.00) fine per day if the structure

18

is occupied prior to receiving a temporary occupancy permit or an occupancy permit." Plainfield Building Code § 2.5-15 (approved Jan. 4, 2016). Actual damages would be uncertain because it is dependent on the number of days defendants are in violation. Moreover, without the Agreement, the Village could have collected fines for the entire time defendants occupied the property without an occupancy permit or temporary occupancy permit, from July 13, 2018, to November 27, 2018. By our calculation, those fines would have amounted to $68,500. Instead, by entering into the Agreement with defendants, the Village forfeited the right to collect fines incurred before August 27, 2018.

¶ 71 Additionally, the fines the Village seeks pursuant to the Agreement are not a windfall. The entire purpose of the Agreement was for defendants to install a fire alarm system that they had failed to do for nearly a year, in violation of local ordinances. Although defendants did not comply with the Agreement, they still benefited as the Village waived the fines incurred before the Agreement.

¶ 72 The court did not err in granting the Village's motion for summary judgment nor in denying defendants' motion for summary judgment.

¶ 73                          B. Defendants' Motion to Disqualify

¶ 74 Defendants also argue the circuit court erred when it declined to disqualify the Village's counsel, Joan Meyers. According to defendants, Meyers negotiated the Agreement on behalf of the Village. Defendants maintain they should have been allowed to depose Meyers because she negotiated the Agreement.

¶ 75 "The advocate-witness rule precludes an attorney from acting as an advocate and as a fact witness in the same case." *Cushing v. Greyhound Lines, Inc.*, 2013 IL App (1st) 103197, ¶ 317. But "disqualification is regarded as a drastic measure [citation] which courts should grant only

19

when the movant can show that the lawyer's testimony is likely to prejudice the testifying lawyer's own clients." *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 396 (1991). "[A] motion to disqualify is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent a showing of abuse of that discretion." *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010). "An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court." *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997).

¶ 76    The Village argues the court properly denied defendants' motion to disqualify because defendants never presented a valid reason to call Meyers as a witness. The Village maintains Meyers did not participate in, and has no personal knowledge of, the factual allegations identified in the pleadings. She did not draft the Agreement; the Agreement was proposed and drafted by defendants' counsel. More importantly, the negotiation or drafting of the Agreement was never at issue. We agree with the Village.

¶ 77    Defendants did not show how Meyers' testimony would likely prejudice the Village. The record clearly establishes Meyers did not draft the Agreement and she was not personally involved in the fire alarm system installation. Disqualification, a drastic measure, was not appropriate under the circumstances. The court did not abuse its discretion.

¶ 78                C. The Village's Motion for Protective Order and to Quash Subpoenas

¶ 79    Defendants contend the circuit court erred in granting the Village's motion for protective order and to quash subpoenas. "The applicable standard of review for rulings on discovery issues is the abuse of discretion standard." *Illinois Environmental Protection Agency v. Illinois Pollution Control Board*, 386 Ill. App. 3d 375, 390 (2008). "We review a circuit court's decision to quash a subpoena for abuse of discretion." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st)

20

130380, ¶ 62. Defendants argue the information sought in their discovery requests, specifically the negotiation of Agreement terms, are relevant to the issues in this case. According to defendants, they should have been able to depose the people responsible for negotiating, drafting, and approving the Agreement, including the former Village president who signed the Agreement.

¶ 80 The Village argues that, while defendants claim these current and former Village employees may have information pertaining to the negotiation of the Agreement and the meaning of the terms in the Agreement, none of those issues were in dispute in the litigation. Further, it contends, defendants have not articulated how any of these individuals had any relevant information to the litigation. We agree with the Village.

¶ 81 Of the list of Village employees defendants subpoenaed, only one individual—the former Village president—had even a remote connection to the Agreement: he signed the agreement. But there is no evidence to suggest he was any more involved than that. Defendants were interested in deposing the people responsible for negotiating, drafting, and signing the Agreement, yet neglected to depose the only individual who actually drafted the Agreement. Argoudelis himself testified that his attorney at the time drafted the Agreement. There is nothing in the record that suggests any other Village employees, past or present, were involved in executing the Agreement. The court did not abuse its discretion.

¶ 82                              D. Money Judgment Against Ionia

¶ 83 Finally, defendants claim the circuit court erred in entering a money judgment of $45,000 against Ionia because there was no hearing on damages and an evidentiary hearing was necessary to calculate the amount of damages. Defendants again argue the Agreement's excusable-delay provision limited the amount of damages to delays caused by Ionia. Defendants now argue the time period between Phoenix installing the system and the District approving the system was

21

beyond Ionia's reasonable control and therefore fell within the excusable-delay provision. According to defendants, the court should have heard testimony to determine how much of this time period was an excusable delay.

¶ 84    The Village argues the judgment was proper and no evidentiary hearing was required. They assert no factual issues required resolution before damages could be imposed. According to the Village, the motions for summary judgment fully briefed the issues of whether there was an excusable delay and whether the Agreement contained a liquidated damages clause, and defendants point to no facts or evidence to suggest an excusable delay existed. Under the Agreement, Ionia agreed to pay $500 per day in fines from the effective date of the Agreement until the District approved the fire alarm system's installation. Defendants admit the fire alarm system was not installed and approved until November 27, 2018, well past the Agreement's 60-day deadline. According to the Village, the time between the effective date of the Agreement and the date the fire alarm system was installed and approved, results in $45,000 in fines.

¶ 85    "A trial court's assessment of damages will not be disturbed unless it is against the manifest weight of the evidence." *Amalgamated Bank of Chicago v. Kalmus & Associates, Inc.*, 318 Ill. App. 3d 648, 658 (2000). "A damage award is against the manifest weight of the evidence if the trial court ignores the evidence or the measure of damages is erroneous as a matter of law." *Id.*

¶ 86    The Agreement is clear that the $500 per day fine would accrue from the Agreement's effective date until the system was installed by Ionia and accepted by the District. It is undisputed that the system was finally approved on November 27, 2018. The record is also clear there was no excusable delay outside of Ionia's control that would excuse some or all of the fines, as Argoudelis alone caused the delay.

¶ 87        Moreover, according to the Agreement, "[f]ailure of [Ionia] to comply with the terms of the Agreement will result in the imposition of the above-referenced fines ($500.00/day), *forfeiture of the Agreement*, and [Ionia] shall immediately cease all business activities at, and occupancy of, the Property." (Emphasis added). The Village chose not to invoke the forfeiture provision. Had the Village invoked the forfeiture provision, Ionia would have owed all fines accruing from July 13, 2018, to November 27, 2018.

¶ 88        We agree with the Village that there were no factual issues to be resolved in calculating damages, and a hearing was therefore unnecessary. However, both parties miscalculated damages. The total number of days from the effective date of the Agreement (August 27, 2018) to the date the system was finally approved (November 27, 2018) is 92 days. A $500 fine for 92 days amounts to $46,000. The Village's reliance on 60 days in its calculation in its brief appears to be in error. Defendants provide no clear calculations. Yet, throughout the record, the Village only requested $45,000 in damages. Thus, the circuit court did not err in entering a $45,000 judgment against Ionia, and we affirm the court's calculation of damages.

¶ 89                                    III. CONCLUSION

¶ 90        The judgment of the circuit court of Will County is affirmed.

¶ 91        Affirmed.